# Third District Court of Appeal

**State of Florida**

Opinion filed November 29, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D15-2392, 3D16-1181
Lower Tribunal No. 13-15713
_____


**Agritrade, LP, et al.,**
Appellants,

vs.

**Antonio Quercia, et al.,**
Appellees.


Appeals from the Circuit Court for Miami-Dade County, John W. Thornton, Jr., Judge.

White & Case, Raoul G. Cantero, James N. Robinson, David P. Draigh and Jesse L. Green; Perlman, Bajandas, Yevoli & Albright, Paul D. Turner, Jonathan Feldman, Joshua B. Spector and D. Porpoise Evans; Kula & Associates, Elliot B. Kula and W. Aaron Daniel, for appellants.

Ross & Girten and Lauri Waldman Ross; Kozyak Tropin & Throckmorton, Dyanne E. Feinberg, Gail A. McQuilkin, and Javier Lopez, for appellees.


Before ROTHENBERG, C.J., and EMAS and LOGUE, JJ.

EMAS, J.

In these consolidated appeals, Agritrade L.P. and Agritrade Lending, S.A. appeal partial final summary judgments entered against them in favor of Antonio Quercia and Agro Supply, S.A., and Juan Curbelo appeals final judgment entered against him, following a jury trial, in favor of Agro Supply, S.A. For the reasons that follow, we affirm in part and reverse in part.

**BACKGROUND AND PROCEDURAL HISTORY**

Agritrade L.P. ("LP") and Agritrade Lending, S.A. ("Lending") are in the business of exporting agricultural products from the United States to Venezuela. Juan Curbelo ("Curbelo") is a member of LP and Lending, as well as several other related Agritrade companies.[1] Antonio Quercia, a citizen of Venezuela, is the sole shareholder of Agro Supply, S.A. ("Agro Supply").

On March 14, 2012, Agritrade manager/agent Ruben Sierra sent a letter on generic Agritrade letterhead, indicating an agreement for Quercia to "send funds" in the amount of $15 million "as an investment, which will accrue interest at an annual rate of 10%, to be renewed quarterly as Mr. Quercia may decide." The letter further provided that Quercia would give twenty days' notice when he wished to "withdraw the funds" and that the funds would be "received around the week of March 12, 2012." The letter was signed only by Sierra. (This letter will hereinafter be referred to as "the Letter of Intent.")

---

[1] There are several related Agritrade entities, including LP and Lending. When referred to in general, all of the companies, including LP and Lending, will be identified as "Agritrade."

2

On March 29, 2012, Sierra, on behalf of Lending, executed a "Revolving Promissory Note" evincing a loan from Quercia (identified as the "Payee") to Lending (identified as the "Maker"). Under the terms of the note, the principal was due on or before June 26, 2012, and as the Letter of Intent had indicated, fixed an interest rate of ten percent per annum. Quercia transferred the funds from his company Agro Supply's bank account to LP, who later allegedly transferred the funds to Lending.

On June 26, 2012, the day the note was to become due, another "Revolving Promissory Note" was executed by Sierra in favor of Quercia (again identified as the "Payee"), but this time Sierra signed under an LP signature block. Nonetheless, Lending was still identified in the note as the "Maker." The remaining terms of the note were the same, with the exception that the due date for repayment was extended to December 1, 2012. No additional funds were transferred.

As of May 1, 2013, it is undisputed that $9.5 million of the loaned funds remained unpaid. On that date, Agro Supply sued Lending and LP, as well as several other related entities and individuals. After the defendants moved to dismiss the complaint based on, inter alia, Agro Supply's failure to join Quercia as an indispensable party, an amended complaint was filed, adding Quercia as a plaintiff. The amended complaint alleged the following counts:

**Count I:** Breach of contract by Quercia and Agro against LP, Lending, Agritrade Investments, and Agri Commodity Trade, LLC[2] based on the Letter of Intent.

**Count II:** Breach of promissory note by Quercia against LP, Lending, Agritrade Investments, and Agri Commodity Trade, LLC based on the second promissory note. A copy of the second note was attached to the amended complaint.

**Count III:** Violation of Florida's Uniform Fraudulent Transfer Act (section 726.105(1), Florida Statutes), by Quercia and Agro against LP, Lending, Agritrade Investments, Agri Commodity Trade, LLC, Galo Group Limited ("Galo"), and Juan Curbelo,[3] alleging Curbelo improperly caused the Agritrade entities to transfer at least $9.5 million to his alter-ego corporations and that the transfers were made with the actual intent to hinder, delay, and/or defraud the Agritrade entities (or alternatively, without receiving a reasonably equivalent value in exchange) and with the knowledge that a debt was owed to Quercia and Agro.

**Count IV:** Violation of Florida's Uniform Fraudulent Transfer Act (section 726.106, Florida Statutes), by Quercia and Agro against LP, Lending, Agritrade Investments, Agri Commodity Trade, LLC, Galo Group Limited ("Galo"), and Curbelo, alleging at least $9.5 million was transferred to the alter-ego corporations without receiving a

---

[2] Quercia and Agro alleged that these other entities, along with Lending and LP, "operate as a single joint venture business with overlapping ownership, employees, business objectives, business functions and funds."

[3] Quercia and Agro alleged that Curbelo "exercised complete control and dominion over" Galo and the Agritrade entities and that Galo, a BVI company, is merely Curbelo's alter ego. At some point during the litigation, Galo was dismissed for lack of personal jurisdiction.

reasonably equivalent value in exchange, resulting in the insolvency of the Agritrade entities.

**Count V:** Unjust enrichment by Quercia and Agro against LP, Lending, Agritrade Investments, Agri Commodity Trade, LLC, Galo Group Limited ("Galo"), and Curbelo.

**Count VI:** Fraud in the inducement by Quercia and Agro against Curbelo.

**Count VII:** Mere continuation liability by Quercia against Agricultural Services, LLC, alleging it was created in an attempt to shed the Agritrade entities of their debts in a conscious effort to fraudulently defraud, hinder and delay paying creditors.[4]

LP and Lending both answered the amended complaint, asserting several affirmative defenses, including: the Letter of Intent was subsumed and replaced by the subsequent promissory notes; Sierra made a mistake in identifying LP in the promissory note, and Lending was the actual borrower; and Quercia and Agro must elect between their incompatible theories of recovery (unjust enrichment or breach of contract).

Quercia and Agro moved for summary judgment against Lending on counts I and II (breach of contract and breach of promissory note) and against LP on count V (unjust enrichment). Quercia and Agro also moved for summary judgment on Count VIII, the lost instrument count. Agritrade filed its own motion for summary

---

[4] Quercia and Agro later amended the amended complaint to allege an additional lost instrument count (Count VIII) because they could not locate the second promissory note.

5

judgment, claiming that the original plaintiff, Agro, lacked standing at the time the complaint was filed, which was not later cured by adding Quercia as a plaintiff.

On July 31, 2015, the trial court held a hearing on all the pending motions for summary judgment. As to Quercia and Agro's motion for summary judgment on counts I and II (breach of contract and breach of promissory note) against Lending, the court denied the motion as to Agro, but granted it as to Quercia. As to Quercia and Agro's motion for summary judgment on count V (unjust enrichment) against LP, the trial court denied the motion as to Quercia but granted it as to Agro. The trial court also granted Quercia and Agro's motion on count VIII (reestablishment of lost note). Finally, the trial court denied Agritrade's motion for summary judgment on the standing issue.

Thereafter, Quercia and Agro voluntarily dismissed the remaining counts against LP and Lending and the court entered final judgment as follows: (1) in favor of Quercia against Lending in the amount of $9.5 million plus interest; and (2) in favor of Agro against LP in the amount of $9.5 million plus interest.

Lending and LP appealed (Case No. 3D15-2392). While the appeal was pending, the case proceeded to trial on counts III (fraudulent transfer) and V (unjust enrichment) against Curbelo only.[5] On both counts, the jury found in favor

---

[5] Trial also proceeded on count VII against Agricultural Services for mere continuation liability. After a jury verdict in favor of Agro Supply and Quercia, the court entered a final judgment in their favor against Agricultural Services for $9.5 million plus prejudgment interest. Agricultural Services has not appealed.

6

of Quercia and Agro and against Curbelo. The trial court denied Curbelo's motion to set aside the verdict, and entered final judgment against Curbelo, in favor of Agro Supply for $9.5 million plus interest on counts III (fraudulent transfer) and V (unjust enrichment); and against Curbelo in favor of Quercia for $9.5 million on counts III and V. The judgments all provide that "Plaintiffs Quercia and Agro Supply may collect up to the greater amount of any judgment against any one or more Defendants in this action but there shall be no double recovery."

Curbelo timely appealed the final judgments against him (Case No. 3D16-1181) and the appeals of all the judgments in this case were consolidated by this court.

**THE SUMMARY JUDGMENTS**

LP and Lending assert that the trial court erred in entering summary judgment on the breach of contract, breach of note, unjust enrichment and lost note counts because, inter alia, there were genuine issues of material fact as to: (1) who was entitled to enforce the note—Quercia, Agro Supply, or both; (2) who was the second note's maker; (3) whether there was mutual assent to form a contract with the letter of intent; and (4) who conveyed and who retained the benefit of the money lent. Further, LP and Lending assert that summary judgment was improper as a matter of law.

**Summary Judgment – Counts I, II, and VIII – Quercia v. Lending**

7

The undisputed evidence was that the promissory note identified Quercia as the "Payee" and Lending as the "Maker."  Lending acknowledges that it borrowed money from Quercia, and that $9.5 million remained unpaid at the time the lawsuit was filed.  Thus, the trial court properly granted summary judgment on the breach of contract and breach of note claims in favor of Quercia against Lending.  Further, the trial court properly granted summary judgment in favor of Quercia and against Lending on the lost note count (Count VIII).

### Summary Judgment – Count VIII – Agro Supply v. Lending

However, we agree with Lending, and Agro Supply concedes, that the trial court erred in granting summary judgment to Agro Supply on the lost note count. The undisputed evidence established that only Quercia, and not Agro Supply, was a party to the promissory note.  We therefore reverse and remand to the trial court for the limited purpose of amending the final judgment on Count VIII.

### Summary Judgment – Count V – Agro Supply v. LP

As to the unjust enrichment claim, LP argues that the trial court erroneously granted summary judgment against LP and in favor of Agro Supply because there were disputed issues of fact as to who owned the money/conveyed the benefit (Agro Supply or Quercia) and as to whether LP retained the benefit or transferred it to Lending.

"The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2)

8

defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., 667 So. 2d 876, 879 (Fla. 3d DCA 1996). "At the core of the law of restitution and unjust enrichment is the principle that a party who has been unjustly enriched at the expense of another is required to make restitution to the other." Gonzalez v. Eagle Ins. Co., 948 So. 2d 1, 3 (Fla. 3d DCA 2006).

At the time summary judgment was entered, the undisputed facts established: Agro Supply wired the $15 million directly to the bank account of LP; LP received those funds; and LP used those funds. Further, LP is the entity that made partial repayments of $5.5 million on the loan, depositing those payments directly into Agro Supply's bank account. LP also made certain interest payments on the loan, directly to Agro Supply. Although Quercia was the sole shareholder, the funds themselves were those of Agro Supply and Agro Supply transferred those funds to LP. Agro Supply clearly conferred a benefit on LP.

As for the second prong—whether LP retained the benefit—LP contends that the affidavit of its treasurer and board member, Rita Wulff, created an issue of fact, because she averred that although she provided Quercia with the wiring instructions for Lending's bank account, the money was mistakenly deposited into LP's bank account, and to remedy that mistake, LP and Lending "adjusted their

9

respective books and records and made corresponding journal entries." However, Wulff did not state that LP actually transferred that money from its account to Lending's account. Rather, LP was the entity that actually paid back portions of the loan to Agro Supply on December 3, 2012 ($5 million) and on March 8, 2013 ($500,000). One month after the first installment was made (January 2, 2013), the alleged accounting adjustment was made. Further, Wulff acknowledged in her deposition that LP was the entity that used the loan proceeds.

As to the third element of an unjust enrichment claim, LP and Lending contend that Agro Supply did not suffer any harm because the undisputed evidence established the money loaned actually belonged to Quercia, not Agro Supply. However, it is undisputed that Agro Supply, a corporation, supplied the funds and therefore, the fact that the corporation might be a savings house for Quercia's money is irrelevant. LP and Lending failed to establish a lack of corporate formalities which would extinguish Agro Supply's interest in the loan proceeds it provided to LP.

LP and Lending also argue that Agro Supply cannot recover under the unjust enrichment count because it is barred by the existence of an express contract. We disagree. In Florida, it is well-settled that "the law will not imply a contract where an express contract exists concerning the same subject matter." Real Estate Value Co. v. Carnival Corp., 92 So. 3d 255, 263 n. 2 (Fla. 3d DCA 2012) (quoting Kovtan v. Fredericksen, 449 So. 2d 1, 1 (Fla. 2d DCA 1984)). See also Wiand v.

10

<u>Wells Fargo Bank</u>, N.A., 86 F.Supp.3d 1316, 1332 (M.D. Fla. 2015) (same). There is no doubt that an express contract exists which "concerns the same subject matter." The trial court so found by granting summary judgment in favor of Quercia on the promissory note. The money was loaned only once. The amount due is the same, and the final judgment entered in favor of Agro Supply was for the same $9.5 million that was awarded to Quercia on his breach of contract and breach of note claims.

However, in this unique situation, the parties to the contract which "concerns the same subject matter" are not the parties between whom the claim for unjust enrichment lies. Instead, the parties to the instant contract were Quercia and LP, while the "parties" in the unjust enrichment claim were Agro Supply and LP. We find this distinction significant. In <u>Variety Children's Hospital, Inc. v. Vigliotti</u>, 385 So. 2d 1052 (Fla. 3d DCA 1980), a hospital sued both parents of a child who had received medical care at the hospital for recovery of unpaid medical bills. The father had signed a written agreement to pay all charges not covered by insurance at the time the child was admitted. The mother did not sign the agreement. The trial court dismissed the hospital's complaint as to the mother, determining that the father's written agreement to pay precluded a claim for unjust enrichment against the mother. This court, on appeal, disagreed and reversed, holding that the hospital "may recover either from the father, by virtue of his express contract, or from the mother, pursuant to an implied in law contract." <u>Id.</u> at 1054. This court observed

11

that "the long standing rule that an express contract supersedes an implied contract was derived from cases in which the same parties agreed to more than one conflicting contract. Those cases are distinguishable from the case before this court, which involves different parties to different contracts." Id. See also 17 C.J.S. Contracts §7 (noting that "[t]he rule that the existence of an express contract excludes an implied contract has full effect only when the parties to the express contract are the same as the parties to the action.")

The court in Wilson v. EverBank, N.A., 77 F.Supp.3d 1202 (S.D. Fla. 2015), recognized Florida's law on this issue, distinguishing it from the New York law which holds otherwise. Wilson was among several plaintiffs who brought a class action against his mortgage company and several insurance companies regarding force-placed hazard insurance on mortgaged properties in Florida and other parts of the country. Wilson asserted, inter alia, claims for unjust enrichment against his lender, EverBank, and the insurance companies who charged him allegedly exorbitant premiums for that coverage. As to his claim for unjust enrichment against his lender, the court held that Wilson (and the other plaintiffs) could not maintain their unjust enrichment claims because their mortgage contracts precluded those claims. Id. at 1220 (citing to State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc., No. 6:11–cv–1373–Orl–31GJK at *5 (M.D. Fla. Dec. 21, 2011) for the proposition that "upon a showing that an express contract exists between the parties the unjust enrichment . . . count fails.")

However, as to the insurance company defendants (with whom Wilson and the other class members did <u>not</u> have an express contract), the court held that <u>only</u> the New York plaintiff's express contract with his lender barred his unjust enrichment claim against the insurance companies, because New York law differs from Florida in that "'claims for unjust enrichment may be precluded by the existence of a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract.'" <u>Id.</u> 1235 (quoting <u>Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.</u>, 837 F.Supp.2d 162, 202 (S.D.N.Y. 2011)). The Florida and Illinois plaintiffs' claims for unjust enrichment survived because "under Florida and Illinois law, those agreements do not govern Plaintiffs' relationship with the Insurer Defendants." <u>Id.</u> at 1236. <u>See also</u> <u>Kowalski v. Jackson Nat'l Life Ins. Co.</u>, 981 F.Supp.2d 1309 (S.D. Fla. 2013) (holding where insured not a party to the insurance policy, the existence of that policy does not preclude an unjust enrichment claim against a non-party to the contract.) <u>Compare</u>, <u>Fulton v. Brancato</u>, 189 So. 3d 967 (Fla. 4th DCA 2016) (holding trial court should not have allowed unjust enrichment claim against defendant and her agency where the jury found an express agreement between the defendant's agency and the buyers' agency.)[6]  Accordingly, the existence of an express contract

---

[6] <u>See also</u> the discussion by the <u>Fulton</u> court regarding the fact that there was no evidence that the plaintiff suffered any additional damages by the defendant and her agency other than the damages that were incurred as a result of the breach of contract by the defendant's agency. <u>Fulton</u>, 189 So. 3d at 970. The court held that the trial court, following the jury verdict, should have granted the defendant and

13

between Quercia and LP did not bar Agro Supply's unjust enrichment claim against LP. We therefore affirm.[7]

**THE FINAL JUDGMENT FOLLOWING TRIAL**

The second appeal is from the two final judgments entered in favor of Quercia and Agro Supply, and against Curbelo, following a jury verdict which found Curbelo liable for unjust enrichment and fraudulent transfer. The amended complaint alleged that Curbelo was the alter ego of all the Agritrade companies, which all operated with a lack of attention to corporate formalities and under the sole control of Curbelo. The complaint also alleged that Curbelo fraudulently transferred funds to Galo Group, another company that was Curbelo's alter ego, "in furtherance of Curbelo's wrongful and fraudulent scheme to unjustly enrichment himself and to improperly recoup monies from the Agritrade Entities."

As to the unjust enrichment claim, Curbelo argues that it should be reversed because, inter alia, Quercia and Agro Supply did not confer a direct benefit on Curbelo; the claim was based on a veil-piercing theory that was never pled; and there was no evidence of an alter-ego relationship. Alternatively, Curbelo asserts that this court should reduce the amount of interest awarded because contractual

_____

her agency's motions for a judgment notwithstanding the verdict ("JNOV") to relieve the defendant and her agency from damages as a result of the unjust enrichment claim "once the jury determined a finite amount of damages attributable for the buyers' agency's breach of contract." Id.

[7] We also note our agreement with the trial court's determination, articulated in the final judgments dated May 3, 2016, that there shall be no double recovery in this action by Quercia and Agro Supply.

14

interest is not available on a claim for unjust enrichment. We find that the veil-piercing theory was properly pled, and further, that competent, substantial evidence supported the jury's determination that an alter-ego relationship did exist and that a direct benefit was conferred on Curbelo. We affirm without discussion the other issues raised by Curbelo on appeal.

**CONCLUSION**

We affirm the trial court's final judgments against LP, Lending and Curbelo, except for the judgment entered in favor Agro Supply against LP on the lost note count (Count VIII). We reverse that judgment and remand for the trial court to amend that portion of the final judgment which entered judgment in favor of Agro Supply against LP on Count VIII. In all other respects, the judgments are affirmed.

Affirmed in part, reversed in part, and remanded with directions.

15