[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10474
_____

D.C. Docket No. 9:18-cv-80864-DMM

STEVEN J. PINCUS,
an individual, on behalf of himself and all others similarly situated,

Plaintiff - Appellant,

versus

AMERICAN TRAFFIC SOLUTIONS, INC,
a Kansas corporation,

Defendant - Appellee.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 2, 2021)

Before ROSENBAUM, JILL PRYOR and BRANCH, Circuit Judges.

JILL PRYOR, Circuit Judge:

Steven Pincus appeals the district court's dismissal of his complaint for failure to state a claim. Pincus sued American Traffic Solutions, Inc. ("ATS"), a red light camera vendor, alleging three counts of unjust enrichment after ATS charged Pincus a fee for processing his payment of a traffic ticket issued through an ATS red light photo enforcement system used in the City of North Miami Beach. On appeal, Pincus argues that the district court erred in dismissing his complaint because (1) the fee ATS charged him was an illegal commission under Florida Statutes § 316.0083(b)(4); (2) the fee was a prohibited surcharge under § 318.121; and (3) ATS violated § 560.204(1) because it operated as an unlicensed money transmitter, all violations that he contends support a claim for unjust enrichment under Florida law.[1]

Each count of Pincus's unjust enrichment claim turns on the proper application of Florida statutory and common law.[2] After careful review, we find

_____

[1] For the first time on appeal, Pincus argues that ATS's imposition of the challenged fee is also illegal based on a preemption theory, that the fee renders the sanction for Pincus's traffic violation "more severe than that imposed by [state] statute." *See* Appellant's Br. at 17–19. Because Pincus did not raise this theory of conflict preemption below, we do not consider it here. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("An issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (internal quotation marks omitted)).

[2] In his complaint, Pincus alleged one cause of action—unjust enrichment—that was set forth in three different counts, each of which corresponded to one of Pincus's theories of unjust

an absence of guiding precedent on these questions of state law—questions that may have sweeping implications for dozens of municipal traffic enforcement regimes across Florida[3] and for the development of Florida's common law.  We therefore certify the questions presented here to the Supreme Court of Florida—the "ultimate expositor[]"—of Florida law.  *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

## I.    BACKGROUND

ATS was the exclusive vendor for the City of North Miami Beach's red light photo enforcement program.[4]  Under its agreement with the City, ATS installed and maintained the necessary equipment, including cameras to capture images of motorists running red lights; monitored intersections for red light violations; issued and mailed citations to violators; and processed violators' payments of civil penalties.  ATS received a monthly service fee based on the number of cameras it operated.  In addition to the monthly fee, the agreement permitted ATS "to charge,

---

enrichment.  For simplicity, we refer to Pincus's various theories as "counts" of his unjust enrichment "claim."

[3] *See* Florida Highway Safety and Motor Vehicles, *Red Light Camera Summary Report* 6 (2019), https://www.flhsmv.gov/pdf/cabinetreports/redlightcameraanalysis2019.pdf (reporting that all 46 jurisdictions disclosing use of operational red light cameras between July 1, 2018 and June 20, 2019 contracted with red light camera vendors and 65% of those jurisdictions contracted with ATS).

[4] The Supreme Court of Florida has held that these relationships—between Florida's cities and red light camera vendors—are permissible so long as a traffic enforcement officer ultimately determines whether probable cause exists to issue traffic citations.  *See Jimenez v. State*, 246 So. 3d 219 (Fla. 2018).

collect and retain a convenience fee of up to 5% of the total dollar amount of each electronic payment processed" to be "paid by the violator." Doc. 50-1 at 102.[5]

An ATS camera in North Miami Beach captured an image of Pincus's vehicle running a red light. Shortly afterward, Pincus received in the mail a Notice of Violation from the City.[6] The notice informed Pincus that he was required to pay a "statutory penalty" of $158.00. Doc. 50-2. The notice instructed Pincus that he could pay the penalty online, by phone, or by mail using a check or money order. According to the notice, the first two options required violators to pay a "convenience/service fee for this service." Doc. 50-2 at 3. In effect, ATS charged a fee for the privilege of paying by credit card. Pincus could avoid the fee only if he paid his penalty by mail using a check or money order. He paid the penalty online with a credit card. The fee Pincus paid as a result of using his credit card totaled $7.90—five percent of his $158.00 penalty. After paying the fee, Pincus filed this putative class action in the United States District Court for the Southern District of Florida, alleging three counts of unjust enrichment based on violations of Florida Statutes §§ 316.0083(b)(4), 318.121, and 560.204.

---

[5] "Doc." numbers refer to the district court's docket entries.

[6] ATS sent the notice on the City's behalf.

ATS filed a motion to dismiss these counts, arguing that under Federal Rule of Civil Procedure 12(b)(6) Pincus failed to state a claim for relief.[7]  The district court granted the motion to dismiss on the ground that Pincus failed to state a claim for unjust enrichment under Florida law.  The district court reasoned that Pincus failed to state a claim because:  (1) the challenged fee was not a "commission" within the meaning of § 316.0083; (2) the fee was not barred as a surcharge under § 318.121, as it was assessed exclusively under Chapter 316; and (3) a private cause of action for unjust enrichment could not be maintained under § 560.240. This appeal followed.

## II.    STANDARD OF REVIEW

We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Hunt v. Aimco Props.,*

---

[7] ATS also moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) on the ground that Pincus lacked standing to sue.  The district court rejected this ground, and ATS has not raised the issue on appeal.  Nevertheless, "we must assure ourselves that we have jurisdiction to hear the case before us," an inquiry encompassing standing.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012).  To satisfy the standing requirement, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Pincus satisfied those requirements in this case.  Financial loss like Pincus's is a paradigmatic example of an injury in fact that is redressable by a favorable judicial decision.  *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (en banc).  His injury is also fairly traceable to ATS, even though he elected to pay the penalty by credit card.  *See Resnick*, 693 F.3d at 1324 (explaining that the fairly traceable requirement demands "less than a showing of proximate cause" and is satisfied when a defendant "indirectly cause[s]" a plaintiff's injury (internal quotation marks omitted)).

*L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In this diversity case we must apply Florida law and decide issues of state law "the way it appears the state's highest court would." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001) (internal quotation marks omitted). On state law issues, we are "bound by the decisions of the state supreme court." *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009). When the state's highest court has not spoken to an issue, we must adhere to the decisions of the state's intermediate appellate courts addressing it, "absent some persuasive indication that the state's highest court would decide the issue otherwise." *Ernie Haire Ford*, 260 F.3d at 1290 (internal quotation marks omitted). We are also bound by previous decisions of this Court on the issue. *See Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir. 1996). But if subsequent decisions of "the Florida courts cast doubt on our [prior] interpretation[s] of state law," we should "reinterpret state law in light of the new precedents." *Id.* (internal quotation marks omitted).

## III.  DISCUSSION

This appeal raises three questions of Florida statutory law and two questions of Florida common law that warrant certification to the Supreme Court of Florida. The statutory interpretation questions arise because each count of Pincus's unjust enrichment claim was premised on an alleged violation of a different Florida statute.  The common law questions concern the scope of Florida's unjust enrichment cause of action and therefore affect each of Pincus's counts identically. Put differently, for Pincus to prevail on any of his counts, he must prevail on the statutory interpretation issue underlying that count and the two common law issues.

The statutory interpretation issues stem from the third element of Florida's unjust enrichment cause of action.[8]  The third element of unjust enrichment under Florida law is that "it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff."  *Agritrade, LP v. Quercia*, 253 So. 3d 28, 33 (Fla. Dist. Ct. App. 2017) (internal quotation marks omitted). Pincus alleged this element was satisfied for each of his counts because it was "inequitable" for ATS to collect and retain his fee in violation of three Florida

---

[8] There is no dispute that Pincus satisfied the first two elements of unjust enrichment for each count.  Those elements are:  (1) the plaintiff "conferred a benefit on the defendant, who has knowledge thereof," and (2) the defendant "voluntarily accept[ed] and retain[ed] the benefit conferred."  *Agritrade, LP v. Quercia*, 253 So. 3d 28, 33 (Fla. Dist. Ct. App. 2017) (internal quotation marks omitted).

statutes:  §§ 316.0083 (Count I), 318.121 (Count II); and 560.204 (Count III).

Thus, the third element of each of Pincus's unjust enrichment counts turns on the

proper interpretation of a different Florida statute.

All three counts also turn on issues of Florida common law.  Even if Pincus

sufficiently alleged a statutory violation supporting each count, those counts can

survive a motion to dismiss only if they are not barred by Florida's law of unjust

enrichment, which raises two open questions.  First, does Florida law allow unjust

enrichment actions premised on violations of statutes that supply no private right

of action?  Second, under Florida law was Pincus's unjust enrichment claim

precluded because Pincus received adequate consideration in exchange for the fee?

We address each of the statutory interpretation issues before turning to the

common law issues.

## A.    Alleged Statutory Violations

To prevail on each of his three unjust enrichment counts, Pincus must

demonstrate that ATS violated the Florida statute underlying that count.  Because

the alleged statutory violations raise unanswered questions of statutory

interpretation whose resolution may affect municipal traffic enforcement regimes

across Florida, we certify those questions to the Supreme Court of Florida.

8

### 1.    Count I:  Violation of Fla. Stat. § 316.0083

In Count I, Pincus alleged that ATS's retention of the fee he paid was inequitable because the fee was an illegal commission prohibited by § 316.0083(1)(b)(4).  Section 316.0083(1)(b)(4) provides:

> An individual may not receive a commission from any revenue collected from violations detected through the use of a traffic infraction detector.  A manufacturer or vendor may not receive a fee or remuneration based upon the number of violations detected through the use of a traffic infraction detector.

Fla. Stat. § 316.0083(1)(b)(4).[9]  The district court dismissed this count after interpreting the statutory term "commission," concluding that the challenged fee was not prohibited because § 316.0083(1)(b)(4) bars only "commission[s] derived from the [statutory penalty]," not "surcharge[s]" that rest atop that penalty.  Doc. 44 at 10–11.  To reach this conclusion, the district court reasoned that the distinction between commissions and surcharges is not foreign to the Florida Legislature, which chose to prohibit surcharges elsewhere in the traffic laws.  *Id.* at 11 (citing Fla. Stat. § 318.121).  Because ATS took no cut of Pincus's statutory penalty but rather charged him a fee in excess of that penalty, the district court concluded that ATS did not violate § 316.0083(1)(b)(4).

---

[9] Pincus also argues that his fee was a prohibited commission under another statute, § 318.18(15)(d).  Because that argument is indistinct from Pincus's argument that the fee is a prohibited commission under § 316.0083(1)(b)(4), we do not address it separately.

ATS agrees, adding only that the district court's conclusion is supported by the preceding subsection, which specifically allocates each dollar of the $158.00 penalty to various funds. *See* Fla. Stat. § 316.0083(1)(b)(3) (providing for a specific allocation of the $158.00 penalty across different departments and funds); ATS argues that the allocation provision explains why commissions taken from the penalty are barred:  each dollar of the $158.00 penalty is already spoken for.  Thus, ATS contends, the allocation provision supports the district court's distinction between "commissions" and "surcharges."

ATS's argument is premised on its interpretation of the word "revenue" in the statute to refer to the $158.00 penalty rather than the entire sum collected by ATS.  *See* Fla. Stat. § 316.0083(1)(b)(4) ("An individual may not receive a commission *from any revenue* collected from violations . . ." (emphasis added)). Pincus attacks that premise.  He argues that "revenue" refers instead to the entire sum collected by ATS (the penalty plus the fee); therefore, ATS's argument that the challenged fee cannot constitute a "commission" because it was not taken "from" the revenue collapses, because the fee was taken from the entire sum of money Pincus paid.  Thus, Pincus argues that ATS's fee was a "commission" because the fee is a cut of the total "revenue collected from violations [like Pincus's]."  Fla. Stat. § 316.0083(1)(b)(4).

10

To prevail with this argument, Pincus must show that the word "revenue" in the statute refers to the entire sum collected by ATS. For that proposition, he offers two arguments. First, he relies on dictionary definitions of "revenue" illustrating that the term is generally used to refer to "total" or "gross" income. *See, e.g.*, *Revenue*, Merriam–Webster Unabridged Online Dictionary, https://unabridged.merriam-webster.com/unabridged/revenue (last visited February 2, 2021) ("[T]he total income produced by a given source."). Second, he argues that the language surrounding "revenue" in § 316.0083(1)(b)(4) supports his interpretation. He contends that because "any" precedes "revenue," we should construe "revenue" broadly. *See* Fla. Stat. § 316.0083(1)(b)(4) ("An individual may not receive a commission from *any* revenue collected." (emphasis added)); Appellant's Reply Br. at 2 ("The statute does not prohibit commissions from '*some* revenue,' or from [the] '*civil penalty* revenue'" but "from **any** revenue.").

So, both parties maintain that the text of the statute supports their respective positions about whether the fee charged by ATS qualified as a "commission" for purposes of § 316.0083. After careful review, we could find no decision from the Supreme Court of Florida, any Florida appellate court, or this Court answering

11

whether the fee that ATS collected qualified as a "commission" for purposes of

this provision.[10]

### 2.      Count II: Violation of Fla. Stat § 318.121

In Count II, Pincus alleged that ATS was unjustly enriched because its

collection of the fee he paid violated § 318.121.  Section 318.121 provides:

> Notwithstanding any general or special law, or municipal or county
> ordinance, additional fees, fines, surcharges, or costs other than the
> court costs and surcharges assessed under s. 318.18(11), (13), (18),
> (19), and (22) may not be added to the civil traffic penalties assessed
> under this chapter.

Fla. Stat. § 318.121.  ATS does not dispute that the challenged fee was a

"surcharge" within the meaning of this provision.  Nor does ATS argue that any of

the five exceptions to § 318.121's no-surcharge rule apply to the challenged fee.

Rather, ATS argues that § 318.121's surcharge prohibition does not apply here at

all because the prohibition applies only to "penalties assessed under this chapter,"

and Pincus's penalty was assessed under Chapter 316, not Chapter 318.

Explaining ATS's argument requires us to place Chapters 316 and 318 in the

context of Florida's Motor Vehicle Code.  *See* Fla. Stat. Ch. 316–324.  Chapter

316, entitled the "Florida Uniform Traffic Control Law," provides for "uniform

---

[10] As the district court recognized, even if Pincus demonstrates that the challenged fee was a "commission" from the "revenue collected [from his violation]," he must also demonstrate that ATS is an "individual" regulated by the statute.  *See* Doc. 44 at 11 n.4.  The district court did not rule on that question, and we leave it to the Supreme Court of Florida to assess whether and how to address it.

traffic laws" that apply throughout the state. *See* Fla. Stat. §§ 316.001, 316.002.

Chapter 318, entitled the "Florida Uniform Disposition of Traffic Infractions Act,"

provides for the "implementation of a more uniform and expeditious system for the

disposition of traffic infractions." *Id*. §§ 318.11, 318.12. In 2010, the Florida

legislature amended both chapters to enable local governments to operate red light

camera enforcement systems on their roadways. *See* Mark Wandall Traffic Safety

Act, 2010 Fla. Sess. Law. Serv. Ch. 2010-80 (West). As amended, Chapter 316

provides that the penalty to be assessed for such an infraction is $158.00. *See* Fla.

Stat. § 316.0083(1)(b)(3)(a) (providing for the penalty and allocation of its revenue

when enforced by a state officer), 316.0083(1)(b)(3)(b) (providing for the penalty

and allocation of its revenue when enforced by a county or municipal officer).

The difficulty is that, as amended, Chapter 318 includes a pair of

functionally identical provisions. *See id*. §§ 318.18(15)(a)(2) (providing for the

same penalty and allocation as § 316.0083(1)(b)(3)(a), albeit in a rearranged

order), 318.18(15)(a)(3) (providing for the same penalty and allocation as

§ 316.0083(1)(b)(3)(b), albeit in a rearranged order). And it may matter which

provision gave rise to Pincus's penalty because § 318.121's surcharge prohibition

applies only to "penalties assessed under [Chapter 318]." *Id*. § 318.121. Pincus

argues that his penalty was assessed under the penalty provision of Chapter 318.

13

ATS argues that the penalty was assessed under the similar provision in Chapter 316.

The district court sided with ATS.  The court concluded that § 318.121's surcharge prohibition has no application here because Pincus's penalty was not "assessed under" Chapter 318.  Doc. 44 at 12.  This conclusion followed from the district court's determination that the "[t]he entire statutory scheme on which [ATS's] enforcement operation rests is contained in Chapter 316."  Chapter 316: (1) authorizes counties and municipalities to use "traffic infraction detectors," (2) permits government entities to authorize traffic infraction enforcement officers, (3) authorizes those officers to issue citations, (4) sets out the requirements for the notice that Pincus received, and (5) establishes the $158.00 fine for a driver's "fail[ure] to stop at a traffic signal if enforcement is by a county or municipal traffic infraction enforcement officer."  *Id.* (internal quotation marks omitted).

Pincus contests this conclusion with four arguments.  First, he argues that his penalty was assessed under Chapter 318 because in the framework of the Florida Motor Vehicle Code, Chapter 316 sets down prohibitions that are enforced by Chapter 318.  Second, he contends that the language of § 318.121 itself demonstrates that the provision's no-surcharge rule applies to his penalty.  Third, he argues that Chapters 316 and 318 are so "thoroughly interrelated" that the district court erred by concluding that his penalty was assessed under one rather

14

than the other.  Appellant's Br. at 24.  Fourth, he argues that the absurdity canon requires us to find that Chapter 318's no-surcharge rule applies to his penalty.

Pincus's first argument, that his penalty was assessed under Chapter 318, is based on the relationship of the two chapters.  He contends that Chapter 316 "sets forth the rules of the road pertaining to photo-enforced red lights, while Chapter 318 contains the provisions relating to infractions and civil penalties."  *Id.*  He points to the fact that § 316.0083(1)(a) authorizes traffic enforcement officers to issue citations for violations of § 316.074(1), which requires drivers to obey the commands of "any official traffic control device," and § 318.18 provides for penalties "for a violation of § 316.074(1)."  Fla. Stat. §§ 316.0083(1)(a), 316.074(1), 318.18(15)(a)(1).  Pincus maintains that his violation of § 316.074(1) was assessed under § 318.18, and therefore § 318.121's no-surcharge rule applies.

Pincus's second argument focuses on the text of the provision setting forth the no-surcharge rule itself.  He points out that § 318.121 exempts from its no-surcharge rule costs imposed under five subsections.  *See id.* § 318.121 (barring "additional fees, fines, surcharges, or costs *other than the court costs and surcharges assessed under s. 318.18(11), (13), (18), (19), and (22)*" (emphasis added)).  The last of these exceptions, for § 318.18(22), is relevant here.  That subsection provides:

> In addition to the penalty prescribed under s. 316.0083 for violations enforced under s. 316.0083 which are upheld, the local hearing officer

15

may also order the payment of county or municipal costs, not to exceed $250.

*Id.* § 318.18(22).  Section 318.121, then, carves out only one exception to its surcharge prohibition for penalties prescribed under § 316.0083—a payment of municipal costs ordered by a local hearing officer.  And that exception does not apply to ATS's fee.  Pincus contends that § 318.121's exception for § 318.18(22) furthers his argument in two ways:  (1) it demonstrates that, in general, § 318.121's no-surcharge rule applies to penalties enforced under § 316.0083, and (2) it shows that, in the context of photo-enforced red light penalties, the Florida legislature exempted only one type of additional fee from § 318.121's general ban on surcharges—and it is not the type of fee at issue here.

Third, Pincus argues that the chapters are "so deeply interrelated" that they cannot be disentangled, and so, according to "any reasonable interpretation of those words," the district court erred in concluding that Pincus's penalty was not "assessed under" Chapter 318.  Appellant's Br. at 14, 26; *see* Doc. 44 at 11–13 (district court concluding that § 318.18(15)(a)(2) was "at most, a parallel cross-reference" to the civil traffic penalty assessed under Chapter 316).  In making this argument, Pincus points out that both chapters are mere constituent parts of the Florida Motor Vehicle Code.  *See* Fla. Stat. § Ch. 316–324.  He contends that the district court's interpretation of "assessed under," which is tantamount to *assessed exclusively under*, was not based on authority and is unreasonable.  According to

16

Pincus, when the chapters are read in context, with their division of labor in mind, they require the conclusion that his penalty was *to some extent* "assessed under" Chapter 318, which is all that is required for § 318.121 to bar ATS's surcharge.

Fourth, Pincus resorts to the absurdity canon. He argues that if the district court is correct that his penalty is not subject to § 318.121's no-surcharge rule, then "a local government or its vendors [could] impose literally *any* surcharge in connection with a civil penalty, inflating the $158.00 statutory penalty by any amount," thereby "render[ing] the statutory sum meaningless." Appellant's Br. at 27.

ATS counters Pincus's arguments by rejecting the view that the Florida Motor Vehicle Act creates a dichotomy between rules, set forth in Chapter 316, and penalties, set forth in Chapter 318. ATS then points to provisions in both chapters suggesting that Pincus's penalty was assessed under Chapter 316.

To rebut Pincus's contention that Chapter 316 sets forth rules and Chapter 318 sets forth penalties for photo-enforced red light infractions, ATS points out that traffic enforcement officers may issue traffic citations through Chapter 318 or Chapter 316 and thus that enforcement may occur through either chapter. *See* Fla. Stat. § 316.640(5)(a) (providing that traffic infraction enforcement officers may issue citations for noncriminal traffic offenses "as defined in s. 318.14" or "under s. 316.0083"). Then, ATS argues that the plain language of Chapters 316 and 318

17

demonstrates that Pincus's penalty was assessed under Chapter 316.  For example, § 316.0083(5)(e) provides that if a Notice of Violation is upheld after a hearing, the violator must "pay the penalty previously *assessed under* [Chapter 316]."  *Id.* § 316.0083(5)(e) (emphasis added).  And § 316.00831 provides for the allocation of a collected penalty when a municipality "impose[s] a penalty *under s. 316.0083(1)(b)*."  *Id.* § 316.00831 (emphasis added).  According to ATS, Chapter 318 similarly suggests that Pincus's penalty was assessed under Chapter 316.  *See id.* § 318.18(22) ("In addition to *the penalty prescribed under s. 316.0083* for violations *enforced under [§] 316.0083 . . . .*" (emphasis added)).  ATS argues that these provisions are rendered a dead letter if Pincus is correct that his penalty was assessed under Chapter 318.

In sum, each party presents reasonable arguments as to whether Pincus's penalty was assessed under Chapter 318 and thus whether § 318.121's surcharge ban applies.  After careful review, we could find no decision from the Supreme Court of Florida, any Florida appellate court, or this Court answering whether Pincus's penalty was assessed under Chapter 318 for purposes of § 318.121.

### 3.    Count III: Violation of Fla. Stat. § 560.204

In Count III, Pincus alleged that ATS was unjustly enriched by his fee because, in collecting it, ATS violated § 560.204(1).  Section 560.204(1) provides:

> Unless exempted, a person may not engage in, or in any manner advertise that they engage in, the selling or issuing of payment

18

instruments or in the activity of a money transmitter, for compensation, without first obtaining a license under this part.  For purposes of this section, "compensation" includes profit or loss on the exchange of currency.

Fla. Stat. § 560.204(1).  The parties dispute whether ATS is exempt from this statute's licensing requirement, and, if not, whether ATS is a "money transmitter" who must "obtain[] a license."[11]  *Id.*

ATS argues that it did not violate § 560.204 for two reasons.  First, ATS points out that "political subdivision[s]," including cities, are exempt from all provisions of Chapter 560, including § 560.204's licensing requirement.  *See id.* §§ 560.204(1) (requiring licensure unless an exemption exists), 560.104(3) (exempting "political subdivision[s]" of the state from Chapter 560), 1.01(8) (including cities as "political subdivision[s]").  From there, ATS contends that it enjoys the same exemption as the City because it is the "exclusive vendor for the City," it "operates pursuant to a contract that controls the services ATS provides to the City," and "Pincus'[s] theory is that ATS is an agent of the City."  Appellee's Br. at 27.  For his part, Pincus responds that ATS's status as an "agent of the City"

---

[11] The district court, without ruling on whether ATS violated § 560.204(1), concluded that § 560.204(1) "cannot serve as the basis for a common law unjust enrichment claim."  Doc. 44 at 17.  Because that conclusion implicates issues of Florida unjust enrichment law, rather than the proper interpretation of Fla. Stat. § 560.204(1), we address the district court's conclusion on this point below.

does not transform it into a "political subdivision" that is exempt from § 560.204's licensing requirement.  Reply Br. at 12.

Second, ATS argues that even if it cannot avail itself of the City's exemption, it nevertheless did not violate § 560.204 because it is not a "money transmitter" that "receive[s]" currency "for the purpose of transmitting it." Appellee's Br. at 27 (citing *Pincus v. Speedway, Inc.*, 741 Fed. App'x 720, 721 (11th Cir. 2018) (unpublished)).  To show that ATS is not a "money transmitter" under the statute, ATS again seeks to use Pincus's own words against him.  ATS argues that it is "impossible for [ATS] to receive [the penalty] for the purpose of transmitting it to the City" because, according to Pincus's own characterization of the transaction, "the City has appointed ATS to fill this role as if it were a division of the City itself."  *Id.* (internal quotation marks omitted).  ATS adds that, Pincus's characterizations aside, "receipt by ATS constitutes receipt by the City" under Florida law because when an "agent holds property on behalf of a principal, the principal has constructive possession."  *Id.* (citing *Phan v. Deutsche Bank Nat'l Tr. Co.*, 198 So. 3d 744, 748 (Fla. Dist. Ct. App. 2016)).  Pincus's response to this argument—that ATS is not a "money transmitter" because it does not "receive" currency "for the purpose of transmitting it"—is straightforward:  Just because ATS is the City's agent does not mean that ATS did not receive Pincus's penalty for the purpose of transmitting it to the City.  Reply Br. at 12.

So, the parties dispute whether ATS acted as an unlicensed money transmitter in violation of § 560.204. As with the first two statutory interpretation issues, after careful review, we could find no decision from the Supreme Court of Florida, any Florida appellate court, or this Court answering whether ATS's conduct was prohibited by § 560.204.

## B.    Common Law

Even if ATS's collection of the fee violated a Florida statute, ATS argues, Pincus nonetheless failed to state a claim for relief for two additional reasons based on Florida's common law: (1) a plaintiff may not assert an unjust enrichment claim based on a statutory violation when the statute does not set forth a private right of action, and (2) Pincus received adequate consideration in exchange for the fee, meaning there was no inequity. We turn now to those issues.

### 1.    Private Right of Action

We first examine whether, under Florida common law, a plaintiff may allege unjust enrichment based on the violation of a statute that provides no private right of action.[12] The district court addressed this issue, though only with respect to ATS's alleged violation of § 560.204, so we start there.

---

[12] Pincus did not allege, and has never argued, that he could bring his counts directly under the Florida statutes at issue, and we have found nothing to suggest that he could have.

21

The district court concluded that § 560.204(1), which outlaws unlicensed money transmitters, "cannot serve as a basis for a common law unjust enrichment claim." Doc. 44 at 17. The district court came to that conclusion after reviewing Eleventh Circuit cases considering whether Florida law permits a plaintiff to state a claim for unjust enrichment based on the violation of a statute that provides no private right of action. *Id.* at 13–17 (citing *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579 (11th Cir. 2013); *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907 (11th Cir. 2008) (unpublished)).

In *Silver Star*, the published case the district court discussed, we held that an unjust enrichment claim could be grounded on a violation of a Florida statute that provided no private right of action. In that case, State Farm sought to recover payments made to a health clinic on behalf of its insureds who were patients of the clinic. 739 F.3d at 582. State Farm sued the clinic for unjust enrichment stemming from the clinic's violation of the Florida Health Care Clinic Act. *Id.* The clinic, State Farm contended, concealed its true owners to take advantage of an exception to the Act's licensing requirements. *Id.* The clinic argued, among other things, that Florida law provided State Farm with no judicial remedy to enforce a violation of the Act. *Id.* at 583. We disagreed. Looking to the Act, we concluded that "[a]lthough the Act [did] not expressly refer to a judicial remedy," it did provide that reimbursement claims were "unlawful," and therefore

22

"noncompensable" and "unenforceable," if they were made by clinics that were unlicensed without a valid excuse. *Id.* (quoting Fla. Stat. § 400.9935(3)). Because of this language, even though the Act did not provide a private right of action, State Farm was "entitled to seek a judicial remedy" to recover the payments it made to the clinic. *Id.* at 584.

The district court also discussed *Buell*, an unpublished and therefore nonbinding case decided before *Silver Star*, in which we reached the opposite result. In that case, we considered a claim that an insurance company had engaged in the sale of insurance through unlicensed agents and deceptive trade practices prohibited by the Florida Unfair Insurance Trade Practices Act ("FUITPA"). *Buell*, 267 F. App'x at 908–09. The plaintiffs asserted common law claims for "money had and received"[13] and recission based on the insurer's unlawful activity, even though the plaintiffs conceded that FUITPA included no private right of action and Florida law expressly provided that an insurance contract is not invalid merely because it was sold by an unlicensed agent. *Id.* at 909. We held that the plaintiffs' claims failed because (1) permitting their common law claims based on statutory violations would "evade the Florida Legislature's decision to withhold" a

---

[13] Under Florida law, "money had and received" is synonymous with unjust enrichment and restitution. *See Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010).

private right of action, and (2) Florida law did not render the plaintiffs' insurance contracts unenforceable. *Id.* at 909–10.

The district court attempted to harmonize *Silver Star* and *Buell*, announcing what it took to be the controlling rule: When the statutory scheme "indicates intent to restrict a private right of action, as in *Buell*," plaintiffs should not be permitted to "evade the Legislature's decision" not to provide a private right of action; but when the scheme "opens a door for plaintiffs to assert their rights, [like] in *Silver Star*," common law claims may proceed even when premised on statutory violations. Doc. 44 at 16–17 (internal quotation marks omitted). Applying that rule to § 560.204, the district court dismissed Pincus's count under Chapter 560 because the chapter provides only for administrative enforcement of its provisions. *See* Fla. Stat. § 560.116 (providing that "[a]ny person having reason to believe that a provision of this chapter is being violated, has been violated, or is about to be violated, may file a complaint with the [Financial Services Commission's Office of Financial Regulation]"). The court noted that nowhere does Chapter 560 suggest that a violation of § 560.204 may serve as a basis for a common law unjust enrichment claim.

Pincus resists the district court's reading of our cases, arguing that the language of § 560.204 opens the door to an unjust enrichment action for him just as the statutory language in *Silver Star* did for State Farm. He contends that the

24

Florida Health Care Clinic Act's treatment of claims made by wrongfully unlicensed clinics as "unlawful," "noncompensable," and "unenforceable" is analogous to § 560.204's dictate that unlicensed money transmitters may not operate "for compensation." Thus, Pincus argues, by operating "for compensation," ATS made an unlawful, unenforceable transaction that can support an unjust enrichment action.

We reiterate that each count of Pincus's unjust enrichment claim—not just his count based on § 560.204—raises the issue of whether plaintiffs may assert unjust enrichment based on statutory violations with no private right of action. Like § 560.204, neither § 316.0083 nor § 318.121 establishes a private right of action for a violation. The parties do not directly address whether all of Pincus's counts fail for want of a private right of action, but they have pointed us toward authorities that arguably support their respective positions. We review these authorities now.

ATS directs us to a line of cases arguably supporting the proposition that unjust enrichment claims cannot be premised on violations of statutes that provide no private right of action. ATS cites the proposition that once a plaintiff "relies on a wrong to supply the unjust factor," the plaintiff must rely on a right "arising from that wrong, not from unjust enrichment." Appellee's Br. at 28 (quoting *State of Fla., Office of Att'y Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F.

Supp. 2d 1288, 1309 (S.D. Fla. 2005)); *see Guy. Tel. & Tel. Co., Ltd. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F. 3d 1241, 1245 n.3 (11th Cir. 2003). These cases implicate the same concern as *Silver Star* and *Buell*: whether plaintiffs may use unjust enrichment to vindicate violations of statutes that do not directly afford them a cause of action.

By contrast, Pincus contends that unjust enrichment claims based on statutes that provide no private right of action may proceed, so long as the underlying statutes neither "explicitly preclude a claim for common law unjust enrichment," Appellant's Br. at 34–35, nor are "so repugnant to the common law that [the statute and the unjust enrichment claim] cannot coexist." *Id.* (quoting *Thornber v. City of Fort Walton Beach*, 568 So. 2d 914, 918 (Fla. 1990)). He argues further that "[n]one of the statutes" he relies upon explicitly or implicitly precludes his unjust enrichment claim. *Id.* at 35. To make this argument, Pincus relies on cases holding that under Florida law the common law persists unless it is expressly overridden by statute. *See, e.g.*, *State v. Ashley*, 701 So. 2d 338, 341 (Fla. 1997) ("Even where the legislature acts in a particular area, the common law remains in effect in that area unless the statute specifically says otherwise . . . ."); *Thornber*, 568 So. 2d at 918 ("Whether a statutory remedy is exclusive or merely cumulative depends upon the legislative intent as manifested in the language of the statute").

26

We are bound by *Silver Star*, where we held that an unjust enrichment action could be grounded on a violation of a Florida statute that provided no private right of action but deemed reimbursement claims made in violation of that statute "noncompensable." 739 F.3d at 583 (citing Fla. Stat. § 400.9935(1)). But there are no cases from this Circuit nor from the Florida appellate courts that address whether *Silver Star*'s reasoning extends to the Florida traffic statutes at issue in this case.

## 2. Adequate Consideration

The second issue that implicates Florida's common law of unjust enrichment is whether Pincus's claim fails because he received a benefit in exchange for the fee he paid ATS. The district court did not consider the issue, but ATS raises it here. We consider it because we "may affirm on any ground supported by the record." *Welding Servs. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007).

ATS argues that Pincus's unjust enrichment claim fails because Pincus "received what he bargained for." Appellee's Br. at 29–30. For this proposition, ATS relies on *Baptista v. JPMorgan Chase Bank*, *N.A.*, 640 F.3d 1194 (11th Cir. 2001).

In *Baptista*, the plaintiff complained of a fee she was charged by Chase Bank in exchange for cashing a check. *Id.* at 1196. Baptista asserted a violation of Fla. Stat. § 655.85 (1992), which provided that checks presented to paying

institutions must be settled "at par," and brought a claim for unjust enrichment based on the same facts as her statutory claim. 640 F.3d at 1196.[14] We rejected Baptista's claims because the Florida statute (and common law cause of action) she invoked was preempted by federal regulations promulgated under a federal statute. *Id.* at 1198. We held alternatively, in a footnote, that Baptista's unjust enrichment claim failed as a matter of law because she received "adequate consideration" for the benefit she conferred upon Chase. *Id.* at 1198 n.3 (internal quotation marks omitted). In other words, because Baptista exchanged the fee in question for the privilege of "immediately" cashing her check despite not having an account at the bank, it was not "inequitable" for the bank to retain the fee. *Id.* ("Baptista cannot show that [the bank] failed to give consideration for [the fee]," for "[t]he fee was only levied because [the bank] conferred an additional benefit on Baptista.").

*Baptista*, ATS argues, is on all fours with this case. Pincus had the option to pay his penalty without the challenged fee by sending a check by mail. Instead, with notice of the fee, he chose to pay by credit card. Therefore, ATS contends, Pincus's unjust enrichment claim fails because he received a benefit—the convenience of paying with a credit card, rather than having to mail a check—in exchange for the fee he now challenges.

---

[14] The statute has since been amended to clarify that it does not prohibit institutions from deducting a fee from the face value of the check "if the check is presented to the institution by the payee in person." Fla. Stat. § 655.85 (2014).

28

Pincus suggests that *Baptista* does not control.  He urges us to consider that ATS is not akin to a private entity offering a "service" to a "customer" in exchange for payment.  Reply Br. at 13.  Instead, ATS is the "sole government interface for violators to pay their civil penalties." *Id.* at 14.  Therefore, Pincus contends, he could not have received the benefit of the bargain for his fee because there was no bargain at all.

Since deciding *Baptista*, we have not addressed its reach.  And we could find no decisions from the Supreme Court of Florida or any Florida appellate court answering whether an unjust enrichment claim fails because there is adequate consideration when a vendor adds a surcharge to a state-backed financial penalty in exchange for giving the plaintiff the benefit of paying that penalty with a credit card.

## IV.    CONCLUSION

More than eight million notices have been issued for red light camera violations in Florida, including 1,054,234 issued between July 1, 2018 and June 30, 2019.[15]  In that period, at least 46 jurisdictions in Florida operated red light cameras, all of which contracted with ATS or similar vendors.[16] *Id.*  So, the statutory issues raised by this case—which will determine whether a vendor may

---

[15] Florida Highway Safety and Motor Vehicles, *supra*, at 2–3.

[16] *Id.* at 2.

add a surcharge to red light camera penalties in exchange for permitting individuals to pay their penalties by credit card—may affect millions of Floridians and dozens of Florida's municipal traffic enforcement regimes.  Resolution of the common law issues may also reverberate throughout Florida, affecting Florida's unjust enrichment law across diverse contexts.

Principles of federalism and comity counsel us not to attempt to divine the answers to these challenging and important questions of Florida statutory and common law.  *See In re Cassell*, 688 F.3d 1291, 1300 (11th Cir. 2012) ("When there is substantial doubt about the correct answer to a dispositive question of state law, a better option is to certify the question to the state supreme court."). Accordingly, we certify the following questions to the Supreme Court of Florida:[17]

(1) Did ATS violate Florida law when it imposed a five percent fee on individuals who chose to pay their red light traffic ticket with a credit card? In particular:

a. Does the challenged fee constitute a "commission from any revenue collected from violations detected through the use of a traffic infraction detector" under Fla. Stat. § 316.0083(1)(b)(4)?

---

[17] *See* Fla. R. App. P. 9.150 (permitting us to, on our motion, certify questions of law to the Supreme Court of Florida if the answers are "determinative of the cause and there is no controlling precedent of the Supreme Court of Florida").

b. Was the fee assessed under Chapter 318 and therefore subject to § 318.121's surcharge prohibition?

c. Was ATS a "money transmitter" that was required to be licensed under Fla. Stat. § 560.204(1)?

(2) If there was a violation of a Florida statute, can that violation support a claim for unjust enrichment?  In particular:

a. Does Pincus's unjust enrichment claim fail because the statutes at issue provide no private right of action?

b. Does Pincus's unjust enrichment claim fail because he received adequate consideration in exchange for the challenged fee when he took advantage of the privilege of using his credit card to pay the penalty?

Of course, our statement of any of the questions certified does not "limit the inquiry" of the Supreme Court of Florida or restrict its consideration of the issues that it perceives are raised by the record certified in this case.  *Cassell*, 688 F.3d at 1301 (internal quotation marks omitted).  The entire record on appeal in this case, including copies of the parties' briefs, is transmitted along with this certification.

**QUESTIONS CERTIFIED.**