[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13397

_____

BETTY DENSON,

Plaintiff-Appellant,

*versus*

DONALD GERTEISEN,
LINDA GERTEISEN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:20-cv-00228-SCJ

_____

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, Circuit Judge, and PROCTOR,* District Judge.

PER CURIAM:

This appeal requires us to decide whether the district court erred in granting summary judgment on a premises-liability claim arising under Georgia law. While this case was pending on appeal, the Georgia Supreme Court issued a decision addressing issues relevant here. We therefore vacate the district court's order granting summary judgment and remand so that the district court may consider this new decision in the first instance.

## I.

In October 2018, Betty Denson and her family rented a cabin in Georgia for a short-term stay. The cabin was owned by Donald and Linda Gerteisen. The cabin was a two-story home in which a wooden staircase connected the main and upstairs floors. Two steps of the staircase were two triangular platform steps that turned at an angle. At the beginning of her stay, Denson fell and hit her head while going down the cabin's staircase. She was later diagnosed with a traumatic brain injury.

The cabin was built in 1997 pursuant to a design template. About five years later, the builder sold the cabin to the Gerteisens. Before the cabin was sold, the property was permitted, passed all county inspections, and received a certificate of occupancy. At the

---

* Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

time of the sale, the builder was not aware, and had not received any notice, that any part of the cabin had been designed in violation of any building code. An independent inspection of the cabin, completed at the time of the sale, did not reveal any issue with the staircase, and the Gerteisens did not modify or alter the staircase during their ownership.

When Denson rented the cabin, the Gerteisens had not been residing there. Instead, they used the property as a short-term vacation rental, managed by and rented through Vacasa Vacation Rental, a vacation-property management company. Besides advertising, booking, and managing rentals, Vacasa provided other services including cleaning after every rental; providing towels, sheets, and amenities to renters; and alerting the Gerteisens of any necessary repairs to the property. Vacasa also inspected the property after each stay ended.

During the 16 years that the Gerteisens owned and rented out the cabin as a vacation home, they did not observe any issue with the staircase and never were notified of any issues with it. The Gerteisens sold the property in late 2018, about a month after Denson's stay.

## II.

Denson sued the Gerteisens for her injury, bringing a premises-liability claim arising under Georgia law. She alleged that the Gerteisens owed a duty of care to her as an invitee to the property. *See* O.C.G.A. § 51-3-1 (stating that an owner of land is liable to invitees for "injuries caused by his failure to exercise ordinary care in

keeping the premises . . . safe"). They breached this duty, she pled, by maintaining the cabin's staircase in a dangerous condition.

The Gerteisens moved for summary judgment. In their motion, they argued that although a property owner generally owes a duty to use ordinary care to keep the premises safe for all invitees, a different standard applied to them because they were "out-of-possession" landlords. Under Georgia law, an out-of-possession landlord is one who has "fully parted with possession and the right of possession." O.C.G.A. § 44-7-14. Such a landlord is responsible only "for damages arising from defective construction" or "from the failure to keep the premises in repair." *Id.* Because Denson failed to introduce any evidence supporting liability under either a defective-construction or failure-to-repair theory, the Gerteisens argued, they were entitled to summary judgment.

They further argued that even if they were not out-of-possession landlords and § 44-7-14 did not govern Denson's claim, the claim nevertheless failed. The Gerteisens acknowledged that if they were not out-of-possession landlords, they owed Denson a duty to exercise ordinary care in keeping the premises safe. But they argued that Denson had failed to introduce evidence showing that they breached this duty.

In opposing the Gerteisens' motion for summary judgment, Denson argued that § 44-7-14 was inapplicable to a short-term vacation rental because an owner of such a property was not an out-of-possession landlord. Instead, she said, the owner of a short-term vacation rental was more akin to an "innkeeper or depository for

hire." Doc. 45 at 5.[1] And because the Gerteisens were not out-of-possession landlords, they owed a duty of care to her as an invitee to the property and thus were liable for the hazardous condition the staircase created.

Denson also argued in the alternative that even if the Gerteisens were out-of-possession landlords and § 44-7-14 applied, they were liable because her injury arose from a construction defect or because they failed to keep the premises in good repair. To support her position, Denson relied on evidence showing that the staircase violated local building codes based on its handrail dimensions, handrail height, and walkline widths.

The district court granted summary judgment to the Gerteisens. After reviewing relevant case law and the record, including the role of Vacasa and the services it provided, the court concluded that the Gerteisens had fully parted with possession and the right of possession, and so they were out-of-possession landlords. The district court rejected Denson's argument that because the Gerteisens offered the cabin as a "short-term vacation rental[]," they should be treated as "innkeeper[s]." Doc. 59 at 17 (internal quotation marks omitted).

Having determined that the Gerteisens were out-of-possession landlords, the district court ruled that they owed Denson the narrow duties set forth in § 44-7-14—that is, they could be held

---

[1] "Doc." numbers refer to the district court's docket entries.

liable only if Denson proved defective construction or a failure to keep the premises in repair.

To prevail on a theory of defective construction, the court explained, Denson needed to show that the Gerteisens "'knew or by the exercise of reasonable diligence could have known,' before the tenancy was created, of a 'structural defect.'" Doc. 59 at 19 (quoting *WCE Holdings B, LLC v. Lewis*, 870 S.E.2d 522, 525 (Ga. Ct. App. 2022)). "A structural defect is the kind that would have been discovered during a pre-purchase building inspection." *Id.* at 20 (internal quotation marks omitted).

After reviewing the record, including the testimony of Denson's building-inspection expert, who opined that there were at least three defects in the staircase—improper handrail dimensions, height, and walkline widths—the court found there was evidence that the staircase's construction was defective. But because Denson's expert failed to opine on whether the defect would have appeared in a pre-purchase building inspection, the court concluded that the Gerteisens were entitled to summary judgment under a defective-construction theory.

To prevail on a failure-to-repair theory, the court observed, Denson must prove two elements: "a duty to repair" and "notice . . . of the defect." *Id.* at 18 (quoting *Gainey v. Smacky's Invs., Inc.*, 652 S.E.2d 167, 169 (Ga. Ct. App. 2007)). The Gerteisens had a duty to repair, the district court concluded, but there was no evidence in the record that the Gerteisens had knowledge about any defect in the staircase. To support its conclusion, the court pointed

to the pre-sale inspection that showed no defects and a lack of complaints about the staircase while the Gerteisens owned and rented out the cabin. Thus, summary judgment was granted on the failure-to-repair theory.

Having concluded that Denson failed to raise a genuine dispute of material fact as to defective construction or failure to repair, the district court granted summary judgment to the Gerteisens. The court did not address their additional, alternative arguments for why they were they entitled to summary judgment. Denson timely appealed.

**III.**

We review a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Newcomb v. Spring Creek Cooler Inc*, 926 F.3d 709, 713 (11th Cir. 2019). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On appeal, Denson argues that she adduced sufficient evidence to survive summary judgment on her premises-liability claim, which arose under Georgia law. She argues that O.C.G.A. § 44-7-14 does not "apply to transient vacation rental arrangements" such as the arrangement between Denson and the Gerteisens. Appellant's Br. at 1. According to Denson, the arrangement between herself and the Gerteisens was similar to an innkeeper-guest relationship. This relationship meant that the Gerteisens

owed her an ordinary duty of care, which they breached by maintaining the staircase in a dangerous condition. And so, she says, she was not required to establish defective construction or failure to repair under the standard of care applicable to out-of-possession landlords.

In this diversity case we must apply Georgia law "and decide issues of state law the way it appears the state's highest court would." *Pincus v. Am. Traffic Sols., Inc*, 986 F.3d 1305, 1310 (11th Cir. 2021) (internal quotation marks omitted). And "[o]n state law issues, we are bound by the decisions of the state supreme court." *Id.* (internal quotation marks omitted).

After the parties finished briefing the appeal, the Georgia Supreme Court issued its decision in *Efficiency Lodge, Inc. v. Neason* clarifying the framework used under Georgia law to determine when a landlord-tenant relationship exists. 889 S.E.2d 789, 792 (Ga. 2023). The *Efficiency Lodge* litigation began when long-term residents of an extended-stay motel fell behind on their rent payments. *Id.* at 793. The motel threatened to evict them and lock them from their rooms. *See id.* at 792–93. The motel claimed that it had the authority to lock out the residents from their rooms because Georgia law grants a remedy that allows an "innkeeper" to remove a holdover "guest." *See id.* at 795 (citing O.C.G.A. § 43-21-3.2).

The residents sued, claiming that the motel could not remove them from the rooms unless it filed dispossessory actions against them as required by a Georgia statute governing landlord-tenant relationships. *See id.* at 793–95 (citing O.C.G.A. §§ 44-7-49,

50, 55). In the lawsuit, the trial court ultimately granted permanent injunctive relief, concluding that the motel was not an inn and thus was required to initiate dispossessory proceedings to remove the residents. *Id.* at 794.

The motel appealed to the Georgia Court of Appeals, which affirmed the trial court's judgment. *Id.* Looking to Georgia's innkeeper statute, the Georgia Court of Appeals concluded that because the residents were not "transient guests of a hotel as such is understood by a reasonably common person," an innkeeper-guest relationship did not exist between the motel and its residents. *Id.* (internal quotation marks omitted). As a result, the Georgia Court of Appeals concluded, the motel was a landlord that had to undergo dispossessory proceedings to evict the residents. *Id.*

The motel then appealed to the Georgia Supreme Court. *Id.* The Supreme Court described the "key question" in the case as "whether the parties [had] created a landlord-tenant relationship." *Id.* at 792. The Court began by contrasting the landlord-tenant relationship with the innkeeper-guest relationship. *Id.* at 795. It described an innkeeper-guest relationship as a "transient, non-possessory relationship." *Id.* The Court observed that "the landlord-tenant relationship and innkeeper-guest relationship are mutually exclusive." *Id.* But it also noted that "the absence of a landlord-tenant relationship does not necessarily mean that parties are in an innkeeper-guest relationship." *Id.*

Turning to the landlord-tenant relationship, the Court explained that a landlord-tenant relationship is created "when a

property owner 'grants,'" either expressly in a written agreement or through implied possession by the tenant with the landlord's consent, "to another the right 'simply to possess and enjoy the use of' the owner's property, either for a fixed time or at the will of the grantor.'" *Id.* at 792 (quoting O.C.G.A. § 44-7-1). In other words, "the hallmark of a landlord-tenant relationship" is the "transfer of the right of possession—the grant by the owner and acceptance by another." *Id.* at 795.

The Court instructed how courts should determine whether such a transfer occurred. *Id.* at 796. "Because transferring the right to possession requires a grant by the owner and acceptance by another," the intention of the parties determines whether a grant by the owner and acceptance by another occurred. *Id.* The parties' intention, the Court continued, can be shown by express agreement, such as a contract or lease, but even without express agreement, intent may be discerned through "evidence from the parties' arrangement and the circumstances as a whole." *Id.* Said differently, intent can be shown through other evidence establishing that "a person [was] in actual *possession* of the property . . . with the owner's *consent.*" *Id.* (emphasis added).

The Court proceeded to evaluate these two concepts: possession and consent. *Id.* at 797–800. Possession, the Court noted, involves "sufficient acts of ownership and control with respect to the subject property." *Id.* at 797. In a residential context, a landlord-tenant relationship is ordinarily established when "a person does a collection of things . . . normally associate[d] with using the subject

property as her dwelling place—as her home." *Id.* When a renter uses a property as a home, and "not just as a place to sleep or stay for a short time," she can be expected to "maintain[] a relatively continuous physical presence." *Id.* at 797-98. For example, a renter maintaining a relatively continuous physical presence, "perform[s] routine cleaning and maintenance; add[s], remov[es], or alter[s] fixtures, furnishings, and decor; and keep[s] belongings there." *Id.* In short, "acts of ownership and control" that indicate the renter is using the property as her "dwelling place" establish possession. *Id.* at 797–98.

As to the concept of consent, the Court explained that consent may be express or implied. *Id.* at 799. A written agreement may plainly establish consent to transfer the right to possess and use the property. *Id.* But "[e]ven an agreement between the parties that does not expressly transfer the right to possess and use the property may shed light" on the question of consent. *Id.* For example, the agreement could allow or prohibit the "kinds of acts of ownership and control that can establish possession." *Id.* On the one hand, the Court explained, the agreement could require the renter to "provide [her] own furniture, take out the trash, and keep the premises clean"—acts consistent with an agreement to transfer possession. *Id.* On the other hand, the agreement could prohibit the renter "from making any alterations, performing maintenance, or having visitors"—acts inconsistent with an agreement to transfer possession. *Id.*

In addition, when the written agreement is ambiguous or no written agreement exists between the parties, a court may look to the "parties' course of conduct" to determine consent. *Id.* at 800. For example, if an owner knew of and allowed a renter to do things consistent with possession, such as "decorating and furnishing the premises, taking on responsibility for cleaning and maintenance, entertaining houseguests, [or] changing the locks," these facts may establish consent. *Id.* Conversely, if an "owner discouraged or was unaware of these or other acts of ownership or control," a lack of consent may be established. *Id.*

After laying out this analytical framework for determining whether a landlord-tenant relationship existed, the Court declined to decide whether a landlord-tenant relationship existed between the motel and residents. *Id.* at 802. Instead, the Court remanded the case, leaving it to the trial court to apply the framework in the first instance to the facts of the case. *Id.*

We follow a similar path today. Because *Efficiency Lodge* had not yet been decided when the district court granted summary judgment, we remand to the district court for reconsideration.[2]

---

[2] Given our *de novo* standard of review, it is within this Court's discretion to address whether, in light of *Efficiency Lodge*, there was a general issue of material fact about the existence of a landlord-tenant relationship between Denson and the Gerteisens. *See Clarks v. Coats & Clark, Inc.*, 929 F.2d 604, 609 (11th Cir. 1991). Often, in deciding appeals from summary judgments, we forgo the option to remand to the district court. In this case, however, we exercise our discretion to remand for the district court to answer this question in the first instance. *See id.*

22-13397                Opinion of the Court                13

Using the *Efficiency Lodge* framework, the district court should determine whether a landlord-tenant relationship existed between Denson and the Gerteisens. If a landlord-tenant relationship did not exist, then the court's basis for summary judgment, that is, the application of O.C.G.A. § 44-7-14, was erroneous.[3] In turn, the court should determine what legal relationship existed between the parties. The court should not consider itself bound to conclude that the relationship is either landlord-tenant or innkeeper-guest. Another legal relationship may define the relationship between Denson and the Gerteisens more appropriately. *See, e.g.*, O.C.G.A. §§ 43-21-2 (defining depositories for hire as "[p]ersons entertaining only a few individuals, or simply for the accommodation of

---

[3] In granting summary judgment, the district court relied on several Georgia cases involving tenants who fell on staircases in properties they had rented and unsuccessfully tried to recover from their landlords. In each of those cases, Georgia courts applied the out-of-possession landlord statute, O.C.G.A. § 44-7-14.

But nothing in those cases tells us whether a landlord-tenant relationship existed here. The tenants in those cases undisputedly were using the premises as their dwelling place. *See Martin v. Hansen*, 755 S.E.2d 892, 893–94 (Ga. Ct. App. 2014) (noting that Hansen, the injured party, was "leasing" the property from the owner and that she was injured "[a]fter living in the home for approximately five months"); *Steele v. Chappell*, 474 S.E.2d 309, 310 (Ga. Ct. App. 1996) (noting that the property owner was the injured party's "landlady" and that the injured party had "leased" the house from her for several years). In contrast, here, there is a dispute about whether Denson was using the cabin as her dwelling place and thus whether a landlord-tenant relationship existed.

travelers"); 51-3-1 (defining duty of care owed to persons invited on premises by owner of land).[4]

## IV.

In light of intervening guidance from the Georgia Supreme Court that was not available to the district court at the time of its decision, we vacate the judgment of the district court and remand the matter for further consideration consistent with this opinion.

**VACATED** and **REMANDED.**

---

[4] The Gerteisens urge that even if a landlord-tenant relationship did not exist, we should affirm on alternative grounds. *See Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015) (recognizing that we may affirm on any basis supported by the record). They reassert several arguments, which were submitted to but not examined by the district court, why they are not liable to Denson even if no landlord-tenant relationship existed. But the district court never addressed these alternative arguments. The district court may evaluate them in the first instance on remand if it deems necessary. *See Mamani v. Sánchez Bustamante*, 968 F.3d 1216, 1240 n.26 (11th Cir. 2020).

In addition, because we determine that remand is appropriate for the district court to consider anew whether a landlord-tenant relationship existed, we also do not reach the question whether, if there was a landlord-tenant relationship and § 44-7-14 applied, Denson presented sufficient evidence to establish that the Gerteisens were liable under a defective-construction or a failure-to-repair theory of liability.