[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15184
_____

D.C. Docket No. 1:13-cv-00352-WS-N


WRIGHT TRANSPORTATION, INC.,

Plaintiff-Appellee,

versus

PILOT CORPORATION,
PILOT TRAVEL CENTERS LLC,
d.b.a. Pilot Flying J,
JAMES A. HASLAM, III,
JOHN FREEMAN,

Defendants-Appellants,

BRIAN MOSHER,
MARK HAZELWOOD,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(November 22, 2016)

Before MARTIN and JORDAN, Circuit Judges, and VINSON,[*] District Judge.

MARTIN, Circuit Judge:

This appeal arises out of several years of litigation between the parties now before us, as well as many others. This litigation has occupied the federal courts in the form of individual suits, class actions, and multidistrict litigation. The issue on appeal is whether federal courts that are given original subject-matter jurisdiction over state-law claims by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), retain that jurisdiction even when the class claims are dismissed before the class is certified. The District Court found that CAFA does not vest the federal courts with original jurisdiction over state-law claims after the class claims are dismissed. After careful review and with the benefit of oral argument, we reverse and remand.

I.

Pilot Corporation, Pilot Travel Centers LLC, d/b/a Pilot Flying J, and the named employees of each[1] (collectively, "Pilot") operate the largest chain of truck

---

[*]Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

[1] Wright Transportation, Inc. named four individuals as defendants. At all relevant times, Defendant James A. Haslam III was Chairman and CEO of Pilot, Defendant Mark Hazelwood was President of Pilot, Defendant Brian Mosher was Director of National Accounts and Director of Sales for Pilot Flying J, and Defendant John Freeman was Vice President of Sales for Pilot. Only Mr. Haslam and Mr. Freeman are still parties to this appeal, but this determination of subject-matter jurisdiction under CAFA applies to all defendants named in the complaint. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 1237 (2006) ("[C]ourts . . . have

2

stops in the United States.  As part of this business, Pilot contracts to provide diesel fuel to long-haul trucking companies at discounted rates.  A 2013 FBI investigation found evidence that Pilot employees had engaged in a conspiracy to defraud Pilot's customers by withholding the contracted-for discounts without the customers' knowledge or approval.

Wright Transportation, Inc. ("Wright") is an Alabama corporation that had a fuel-discount contract with Pilot.  In July 2013 it brought this federal lawsuit as a class action on behalf of itself and others who had fuel-discount contracts with Pilot.  Wright alleged that Pilot and certain Pilot employees systematically shortchanged some trucking companies with whom Pilot had discount agreements by failing to give them the agreed-upon benefits.  The lawsuit alleged that Pilot targeted customers whom it considered to be unsophisticated, including small businesses that lacked the resources to easily discover Pilot's scheme and Latino customers who might face a language barrier.

Wright brought several claims against Pilot under both state and federal law: (1) violations of 18 U.S.C. § 1962(c) for racketeering; (2) violation of 18 U.S.C. § 1962(d) for conspiracy to commit racketeering; (3) breach of contract under state law; (4) deceptive trade practices in violation of state law; (5) unjust enrichment

---

an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

3

under state law (brought on behalf of only a subset of class members in states with such laws); (6) fraudulent misrepresentation under state law; (7) negligent misrepresentation under state law; and (8) suppression of the proper discounts owed to the class members under state law.

A.

The procedural history that gives rise to this appeal is unusually complex. Because it is the complex procedural history that has led to the question we must answer here, we will set out that history in some detail. Wright first filed suit in the United States District Court for the Southern District of Alabama in July 2013. Although many of the claims were based in state law, Wright alleged it was proper for the court to exercise federal jurisdiction over all of the claims for four independent reasons: (1) federal-question jurisdiction under 28 U.S.C. § 1331 for the federal racketeering claims; (2) diversity jurisdiction under 28 U.S.C. § 1332(a); (3) jurisdiction under CAFA, 28 U.S.C. § 1332(d); and (4) supplemental jurisdiction under 28 U.S.C. § 1367.

In January 2014, the District Court granted part of the defendants' motion to dismiss Wright's claims. In particular, the court dismissed both of Wright's federal racketeering claims as well as its state-law claims for fraudulent misrepresentation, negligent misrepresentation, and suppression of discounts. The court dismissed these claims on account of Wright's failure to plead the

4

defendants' conduct with sufficient particularity under Federal Rule of Civil Procedure 9(b). The court went on to dismiss Wright's deceptive practices claim on the ground that Wright was not able to satisfy one of the statutory elements.

In this ruling, the District Court also dismissed all of the class claims asserted in the complaint. While Wright's case was pending in the Alabama District Court, a rival class-action suit reached a court-approved settlement in the United States District Court for the Eastern District of Arkansas. [2] Even before the Arkansas settlement received final approval, Wright and Pilot had acknowledged that the judicial approval of this settlement would "deprive [Wright] of standing to pursue [its] class claims." The approval from the Arkansas court occurred before the Alabama District Court's ruling on the motion to dismiss in this case, so, in keeping with the parties' acknowledgement, it dismissed the class claims. While the District Court dismissed the state-law claims for breach of contract and unjust enrichment brought for the class, those claims survived for Wright individually.

### B.

Meanwhile, in April 2014, six separate suits were pending against Pilot in five other federal judicial districts around the country. These lawsuits were all brought by parties who had opted out of the nationwide class settlement approved

---

[2] Wright filed its complaint in the Alabama District Court on July 10, 2013. On July 16, 2013, the Arkansas District Court preliminarily approved a settlement. It granted final approval of that settlement on November 25, 2013.

by the Arkansas District Court and who were making claims similar to Wright's.

At Pilot's urging, these six other suits were consolidated with Wright's into one

multidistrict-litigation ("MDL") proceeding in the United States District Court for

the Eastern District of Kentucky ("the MDL court").

In July 2015, the MDL court found new information that deprived it of

diversity jurisdiction over this case.  The MDL court became aware of a March

2015 filing by Pilot Travel Centers LLC in the United States District Court for the

Middle District of Florida.  Wright, as an Alabama corporation with its principal

place of business in Alabama, is, of course, a citizen of Alabama.  Pilot's Florida

filing alleged that one of the members of its LLC was a citizen of a state that Pilot

had not disclosed in the consolidated cases.[3]  In light of this allegation, the MDL

court ordered Pilot to file a response detailing the citizenship of each defendant,

and, where a defendant was an LLC, to disclose the citizenship of each LLC

member.  Pilot's response included that it had a "sub-sub-sub-sub-member"[4] that

was a citizen of Alabama at the time Wright filed its suit.  Pilot advised the court

that "after extensive diligence and receipt of new information from Pilot's

members, it appears that Pilot is a citizen of . . . Alabama."  Yet Pilot urged the

---

[3] "[L]ike a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen."  Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam).

[4] Pilot explained this was "a member of an LLC that is, in turn, a member of an LLC that is, in turn, a member of an LP that is, in turn, a member of an LLC that is, in turn, a member of Pilot [Travel Centers LLC]."

MDL court to retain jurisdiction over Wright's suit because Wright originally asserted its claims under CAFA. Without deciding the question of jurisdiction under CAFA, the MDL court remanded the case to the Alabama District Court in September 2015.

## C.

On remand to the District Court, Wright moved to dismiss its remaining claims without prejudice so that it could refile in Alabama state court. Pilot argued in opposition that the District Court had original jurisdiction under CAFA and, alternatively, should continue to retain supplemental jurisdiction.

The District Court dismissed the CAFA argument in a footnote:

> The defendants insist that "post-filing events do not divest a court of CAFA jurisdiction." This may be so, see Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 n.12 (11th Cir. 2009), but it is irrelevant; the dismissal of the CAFA (and RICO) claims means the Court "has dismissed all claims over which it has original jurisdiction," which means its statutorily granted discretion to decline to exercise supplemental jurisdiction has been triggered. See, e.g., Brown v. Mortgage Electronic Registration Systems, Inc., 738 F.3d 926, 933 (8th Cir. 2013) (upon dismissing CAFA claim, trial court had discretion under Section 1367(c) whether to retain state claim).

Wright Transp., Inc. v. Pilot Corp., No. CV 13-0352-WS-N, 2015 WL 6511306, at *2 n.2 (S.D. Ala. Oct. 27, 2015) (citation omitted).

The District Court then analyzed whether to exercise supplemental jurisdiction. The District Court reasoned that considerations of comity and fairness favor remand when federal claims are dismissed before trial unless they are

7

outweighed by considerations of judicial economy and convenince. The District Court found that judicial economy did not support retaining jurisdiction because the case had largely been pending before the MDL court, leaving the District Court unfamiliar with the merits of the case. It also found that the state court in Alabama was just as convenient for the parties as the Alabama federal court. Thus, the District Court found no "compelling [] argument for exercising supplemental jurisdiction" over Wright's state-law claims and dismissed them without prejudice so Wright could refile them in state court. This appeal followed.

## II.

Pilot argues that the District Court erred in holding it did not have original jurisdiction over Wright's state-law claims under CAFA. We review de novo "questions of subject matter jurisdiction and statutory interpretation." Lindley v. FDIC, 733 F.3d 1043, 1050 (11th Cir. 2013).

Specifically, Pilot argues that CAFA conferred original jurisdiction over all of Wright's claims at the time Wright filed them, such that the jurisdiction could not have divested when the class claims were later dismissed. Pilot asks us to rule that once this original jurisdiction is conferred under CAFA, it sticks for the entire life of the case, such that it could not be destroyed by later events like the class settlement in the Eastern District of Arkansas.

A.

In its complaint, Wright alleged eight counts against Pilot:  two federal claims brought pursuant to 18 U.S.C. § 1962 and six state-law claims.  Wright alleged that these claims were made both "for itself and all members of the [proposed] Class of all others similarly situated."

Wright also alleged in its complaint that the District Court had original jurisdiction over its suit pursuant to CAFA.[5]  District courts have "original jurisdiction of any civil action" under CAFA where three criteria are met.  28 U.S.C. § 1332(d)(2).  First, the amount in controversy must exceed $5 million, as aggregated from the claims of the individual class members.  Id. §§ 1332(d)(2), (6).  Second, the suit must be brought as a "class action" for a proposed class with at least one-hundred members.  Id. §§ 1332(d)(2), (5).  Third, "any member of [the] class . . . [must be] a citizen of a State different from any defendant."[6]  Id. § 1332(d)(2)(A).

B.

After its federal and class claims were dismissed and the lack of diversity jurisdiction discovered, Wright requested that the District Court dismiss its

---

[5] As set out above, the other three bases given for subject-matter jurisdiction were defeated over the course of this litigation:  (1) the federal claims were dismissed as not properly pleaded; (2) the parties were ultimately found to have lacked diversity throughout the litigation, including when the complaint was filed; and (3) supplemental jurisdiction was not exercised.

[6] There are exceptions that are not relevant here.  See 28 U.S.C. § 1332(d)(4).

remaining state-law claims without prejudice, so that it could refile them in state court.  Pilot, wishing to remain in federal court, opposes dismissal.

Pilot points to this Court's precedent in Vega v. T-Mobile USA, Inc., 564 F.3d 1256 (11th Cir. 2009), arguing that we "held that a plaintiff's failure to certify a class does not divest the federal courts of subject matter jurisdiction under CAFA."  It is noteworthy that in Vega we reviewed a case in which the District Court modified a proposed nationwide class to be a Florida-only class and certified it on that basis.  Id. at 1264.  This Court reversed.  We concluded that the District Court abused its discretion in finding the numerosity requirement of Federal Rule of Civil Procedure 23 satisfied because the record contained no Florida-only evidence of sufficient numerosity.  Id. at 1267–68.  We noted that the failure to show numerosity "does not divest the federal courts of subject matter jurisdiction under [] CAFA," even though it gives rise to the possibility that there are fewer than one hundred members of the class.  Id. at 1268 n.12.  We reasoned that "jurisdictional facts are assessed at the time of removal; and post-removal events (including non-certification, de-certification, or severance) do not deprive federal courts of subject matter jurisdiction."[7]  Id.

Our reasoning in Vega was explicitly adopted by the Seventh Circuit, and every circuit to consider this question has agreed.  In Cunningham Charter Corp. v.

_____

[7] We discuss below whether it is significant that in Vega the suit was removed from state court while this one was filed originally in federal court.

10

Learjet, Inc., 592 F.3d 805 (7th Cir. 2010), the Seventh Circuit wrote that it agreed with this Court's holding that subject-matter jurisdiction is not destroyed when a district court denies class certification, because "federal jurisdiction under the Class Action Fairness Act does not depend on certification." Id. at 806 (citing Vega). More recently, the Fifth Circuit wrote that "[e]very circuit that has addressed the question has held that post-removal events do not oust CAFA jurisdiction." Louisiana v. Am. Nat'l Prop. & Cas. Co., 746 F.3d 633, 639 (5th Cir. 2014) (collecting cases from the Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits); see also In Touch Concepts, Inc. v. Cellco P'ship, 788 F.3d 98, 102 (2d Cir. 2015) ("[W]e join the Seventh Circuit in holding that jurisdiction under CAFA is secure even though, after removal, the plaintiffs amended their complaint to eliminate the class allegations." (quotation omitted)).

Class-action claims filed in or removed to federal court under CAFA can be dismissed for lack of jurisdiction if those claims contain frivolous attempts to invoke CAFA jurisdiction or lack the expectation that a class may be eventually certified. See Cunningham, 592 F.3d at 806 (interpreting 28 U.S.C. § 1332(d)(8)). Such dismissals, though, mean the federal court never had CAFA jurisdiction in the first place; they do not mean that jurisdiction existed and then was lost. See id. at 806–07. In this way, CAFA jurisdiction is analogous to conventional diversity jurisdiction, which is not destroyed by post-filing changes to party citizenship, but

11

only by discovery that the parties were not actually diverse at the time the operative complaint was filed.[8]  See id. at 807; see also In re Burlington N. Santa Fe Ry. Co., 606 F.3d 379, 381 (7th Cir. 2010) (per curiam) ("CAFA is, at base, an extension of diversity jurisdiction.").  Therefore, CAFA jurisdiction is not easily defeated.

## C.

There is one major difference between the precedent relied upon by Pilot and this case.  The precedent involves suits filed in state court and then removed to federal court under CAFA.  Here, Wright first filed directly in federal court under CAFA but now wishes to refile in state court.

"[R]emoval cases present concerns about forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction."  In re Burlington, 606 F.3d at 381.  Those concerns dictate that we guard against a plaintiff whose case has been removed to federal court and who then amends its pleadings in an attempt to manipulate its way back into state court.  However, those "forum-manipulation concerns [] simply do not exist when it is the plaintiff who chooses a federal forum and then pleads away jurisdiction through amendment."  Rockwell Int'l Corp. v. United States, 549 U.S. 457, 474 n.6, 127 S.

---

[8] This very case serves as an example.  Here, the discovery earlier in this litigation that Pilot Travel Centers LLC had a "sub-sub-sub-sub-member" that was a citizen of Alabama at the time of filing meant that diversity jurisdiction never existed.

12

Ct. 1397, 1409 n.6 (2007). "Thus, when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Id. at 473–74, 127 S. Ct. at 1409; see also Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007) (per curiam) ("[W]e follow Rockwell and agree . . . that we must look to [the plaintiff's] amended complaint to determine whether we have subject-matter jurisdiction."). [9] The Second Circuit, in dicta, applied this concept to a hypothetical CAFA case, writing that if a case were filed originally in federal court under CAFA jurisdiction, the court would have to dismiss it as soon as the plaintiff filed an amended complaint that dropped all class-action allegations. In Touch, 788 F.3d at 101. Therefore, the reasons for the hard-and-fast rule that even the plaintiff amending the complaint cannot defeat CAFA jurisdiction do not necessarily exist for suits originally filed in federal court. See, e.g., In re Burlington, 606 F.3d at 381 (holding that a plaintiff's post-removal decision to amend away its class claims does not destroy CAFA jurisdiction).

This case does not require us to decide whether a plaintiff's amendments after filing in a federal court can divest that court of CAFA jurisdiction. The

---

[9] This is one "exception[] to the principle that once jurisdiction, always jurisdiction." Cunningham, 592 F.3d at 807. Other exceptions include when "a case becomes moot in the course of the litigation. . . . [and when] after the case is filed it is discovered that there was no jurisdiction at the outset—not that this is really an exception . . . it is a case in which there never was federal jurisdiction." Id. (citation omitted).

13

parties do not suggest that any action by the plaintiff divested the federal courts of CAFA jurisdiction here. Instead, Wright argues that the District Court's dismissal of the class claims after the settlement in the Eastern District of Arkansas destroyed CAFA jurisdiction. But that settlement occurred after Wright filed its complaint. Wright advances no argument that the complaint was frivolous or deficient under CAFA at the time it was filed. When the post-filing action that did away with the class claims is not an amendment to the complaint, we see no basis for distinguishing cases originally filed in federal court under CAFA from those removed to federal court. We therefore conclude that CAFA continues to confer original federal jurisdiction over the remaining state-law claims in this suit.

D.

Because CAFA vested the District Court with original jurisdiction over the remaining claims, there was no need for it to analyze supplemental jurisdiction.[10] Supplemental jurisdiction does have a role in CAFA cases, but only in those that also have "state-law claims that were never subject to CAFA jurisdiction." In Touch, 788 F.3d at 102 (plaintiff filed tort claims in its individual capacity separate from its class claims).

---

[10] Pilot's argument that the District Court could continue to exercise supplemental jurisdiction over Wright's state claims may have confused the issue. We must nevertheless decline to apply the doctrine of invited error because "subject matter jurisdiction . . . can never be forfeited or waived." United States v. Cotton, 535 U.S. 625, 630, 122 S. Ct. 1781, 1785 (2002); see also Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 1244 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists . . . .").

The District Court relied on Brown v. Mortgage Electronic Registration Systems, Inc., 738 F.3d 926 (8th Cir. 2013), to support its decision to analyze supplemental jurisdiction.  In Brown the Eighth Circuit dismissed CAFA claims but exercised supplemental jurisdiction over the remaining claims.  Id. at 933.  But Brown is different from this case because it was removed to federal court based on only one of its claims qualifying for CAFA jurisdiction.  That meant it was appropriate to consider whether to grant supplemental jurisdiction over the non-class claims.  Id. at 930, 933.  Here, no one disputes that all eight claims were properly pleaded as CAFA claims.  Thus, the District Court had original jurisdiction over all eight claims, and that jurisdiction continues to survive even after later events meant there would be no class.

**REVERSED and REMANDED.**