**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-14081

_____

KEITH PEARCE,
  individually and on behalf of all others similarly situated,
JANET PEARCE,

*Plaintiffs-Appellants,*

*versus*

STATE FARM FLORIDA INSURANCE COMPANY,
STATE FARM FIRE & CASUALTY COMPANY,

*Defendants-Appellees,*

STATE FARM GENERAL INSURANCE COMPANY, et al.,

*Defendants.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14353-DMM

_____

Before BRANCH, ABUDU, and KIDD, Circuit Judges.

PER CURIAM:

Keith and Janet Pearce, Florida residents, sought and obtained insurance coverage from State Farm for a diamond pendant. When they requested a refund of certain premiums following a claim for total loss, State Farm refused to pay. In the ensuing putative class action lawsuit for breach of contract and unjust enrichment, the Pearces filed a series of complaints naming different State Farm entities as defendants: the initial complaint named State Farm General Insurance Company, State Farm Fire & Casualty Company ("SF Fire"), and State Farm Florida Insurance Company ("SF Florida"); then the first amended complaint named State Farm Mutual Automobile Insurance Company ("SF Mutual") and SF Florida; and finally the second amended complaint named SF Florida and SF Fire. The district court determined that SF Florida was the insurer with whom the Pearces had contracted and dismissed all claims against the other defendants. Then, finding that the only remaining named parties were Florida residents, the district court dismissed the remaining claims for lack of subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). The Pearces now appeal.[1]

After careful review, and with the benefit of oral argument, we affirm the dismissal of the claims against SF Mutual and SF Fire. However, we conclude that the district court erred in its

---

[1] The Pearces voluntarily amended their first complaint. They appeal only the dismissal of the First and Second Amended Complaints.

jurisdictional analysis. Therefore, we vacate the dismissal for lack of jurisdiction, and remand for a new jurisdictional inquiry.

## I.    Background[2]

According to the Pearces' complaints, this case arises from an insurance agreement between Keith and Janet Pearce and State Farm Florida, State Farm Mutual, and/or State Farm Fire.[3] In January 2016, State Farm issued the Pearces a Personal Article Policy for a diamond pendant, which had an appraised value of $34,496. In the event of a total loss, the Personal Article Policy required the insurer to pay "the full amount of [the] cost to replace the item" and to refund the "unearned premium," that is, the difference between the amount the insured party had actually paid in premiums based on the appraised value and the amount he would have paid based on the replacement value. When the pendant was stolen in January 2021, the Pearces made a total loss claim under the Personal Article Policy, and the insurer paid them $12,741.66, the pendant's replacement value. The insurer did not, however, reimburse them for the unearned premiums.

---

[2] At the motion to dismiss stage, we "accept[] the complaint's factual allegations as true and constru[e] them in the light most favorable to the plaintiffs." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1177 (11th Cir. 2025).

[3] Much of the dispute between the parties centers around which entity or entities are bound by the insurance agreement based on the specifics of the language and branding used therein. We will discuss these specifics in greater detail below.

Because the contract claims before us turn on the contents of the insurance contract, we describe it here in some detail. The parties agree that the complete Personal Article Policy insurance agreement (the "agreement") consists of the following: (1) "the declarations, titled 'Renewal Certificate,'"; (2) "the PAP booklet, version 'FP-7942'" ("PAP booklet"); and (3) the two endorsements. Each of the four documents constituting the agreement is independently titled and paginated.

The first page of the Renewal Certificate is the only one in the agreement that contains information personalized to the Pearces' policy. The top left corner reads as follows:

**State Farm Florida Insurance Company**
*PO Box 88049*
*Atlanta GA 30356-9901*

Directly below that is the following:

PEARCE, KEITH & JANET
[Street address redacted in original]
ST AUGUSTINE FL 32092-1094

Just below that is the policy number, then a list of the "Forms, Options, and Endorsements" included in the agreement: the Personal Articles Policy, FP-7942; Inflation Coverage, OPT I; Amendatory Endorsement, FE-7749; and Loss Settlement Endorsement, FE-3357.

On the right side of the page, the Renewal Certificate again lists the policy number and designates that the policy is a Personal

23-14081                  Opinion of the Court                       5

Articles Policy running from April 15, 2020, to April 15, 2021. Below that, the class of property is listed as jewelry, the amount of insurance as $34,469,[4] and the annual premium as $471.00.

The bottom of the page includes the name of the agent, Edie Williams Insurance Agency, Inc., and its phone number. It also lists the date the renewal certificate was prepared—February 13, 2020— and the following reminder: "Moving? See your State Farm agent. See reverse for important information."

The next page includes directions to "www.statefarm .com®" to login for more information about the policy. It twice directs the insured to "contact your State Farm® agent" with any questions. The remaining two pages of the Renewal Certificate are headed "State Farm Florida Insurance Company" and include footers with the Edie Williams name and phone number. They also include two further references to "your State Farm® agent" and one to "State Farm®."

Next, the PAP booklet. Its cover page includes the State Farm name and logo at the top, the title "State Farm® Personal Articles Policy," and the designation "FP-7942." The second full page provides the following definitions:

> In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if

---

[4] Both complaints specify the amount insured as $34,496. This number ($34,496 rather than $34,469) seems most likely to be a typo, and the difference is not material to any of the issues here.

a resident in the same household.  "We," "us" and "our" refer to the Company shown in the Declarations."

It further specifies that "[w]e cover the Classes of Property shown in the Declarations."  The remainder of that document sets forth territorial limits, coverage limits and exclusions, conditions, and optional policy provisions.  The end of the final page appears as follows:

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Lynne M. Yousell*    Secretary          President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment is proper.

Aside from the title of the document ("State Farm® Personal Articles Policy"), no State Farm entity is expressly named in the PAP booklet.

The two final documents in the agreement are named "AMENDATORY ENDORSEMENT (Florida)" (form FE-7749) and "FE-3357 LOSS SETTLEMENT ENDORSEMENT."  Neither one mentions any State Farm entity in its title or text, but the loss settlement endorsement is copyrighted "State Farm Mutual Automobile Insurance Company, 2014."

The Pearces initially sued State Farm General Insurance Company, SF Fire, and SF Florida, bringing claims for breach of contract and unjust enrichment on behalf of Keith Pearce "and others similarly situated who were paid a total loss claim pursuant

to a State Farm [personal article policy] but were not refunded State Farm's unearned premium as required by the policy terms." After the defendants filed their first motion to dismiss for lack of jurisdiction and failure to adequately plead claims, the Pearces sought and received leave to file an amended complaint ("FAC"), which added Janet Pearce as a plaintiff and replaced defendants SF General and SF Fire with SF Mutual, retaining SF Florida. The amended complaint alleged breach of contract and unjust enrichment claims against both SF Mutual and SF Florida. The defendants again moved to dismiss the Pearces' FAC for lack of jurisdiction and failure to adequately plead claims, and the district court granted the defendants' motion.

The district court held that the breach of contract claim failed as to SF Mutual because (1) the agreement was not ambiguous and clearly named SF Florida—not SF Mutual—as the insurer and (2) state law did not support the allegation that SF Florida was SF Mutual's agent such that SF Mutual could be held liable for SF Florida's agreement. The court likewise determined that the unjust enrichment claim against SF Mutual failed because the Pearces "ha[d] not properly alleged that SF Mutual, as a non-party to the contract, ha[d] voluntarily obtained any benefit." The court thus dismissed the claims against SF Mutual with prejudice. Because the Pearces—the only named plaintiffs—and the only remaining defendant were all citizens of Florida, the district court dismissed the claims against SF Florida for lack of subject matter jurisdiction. The court denied the Pearces' preexisting request to

amend their complaint, but it allowed them to refile that motion to correct the jurisdictional gaps.

The Pearces then requested and received permission to file their Second Amended Complaint ("SAC"), which replaced SF Mutual with SF Fire as a defendant and renewed breach of contract and unjust enrichment claims against both SF Fire and SF Florida.

The defendants once again moved to dismiss the complaint for lack of jurisdiction and failure to state a claim, and the district court granted their motion. The court reiterated its decision that the agreement was not ambiguous as to the identity of the insurer (SF Florida) and so dismissed the contract claim against SF Fire. The court further held that the Pearces failed to plead facts plausibly alleging that SF Fire had "unjustly retained a benefit to which it was not entitled."[5]  Because these dismissals once again left only Florida citizens as named plaintiffs and defendant, the court dismissed the claims against SF Florida without prejudice for lack of subject matter jurisdiction under CAFA.  The Pearces timely appealed.

## II.    Standard of Review

"We review a dismissal for failure to state a claim de novo, accepting the complaint's factual allegations as true and construing them in the light most favorable to the plaintiffs." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1177 (11th Cir. 2025). "To

---

[5] The Pearces do not appeal the dismissal of the unjust enrichment claim against SF Fire.

prevent dismissal under [Federal Rule of Civil Procedure] 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is 'plausible on its face.'" *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When a document—such as an insurance policy—is "(1) central to the plaintiff's claims" and "(2) undisputed, meaning that its authenticity is not challenged," we may consider that document when reviewing a motion to dismiss. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Here, the defendants attached to their motion to dismiss the Renewal Certificate and PAP booklet confirming the Pearces' coverage, and the Pearces' briefing relies on those documents as the operative agreement at issue here.[6]

Because the Pearces bring state law contract and unjust enrichment claims, "we apply the substantive law of Florida, the forum state, in this diversity action filed in the Southern District of Florida." *Fox v. Ritz-Carlton Hotel Co.*, 977 F.3d 1039, 1049 (11th Cir. 2020) (quotation omitted). "In interpreting Florida law, we look

---

[6] The defendants ask the Court to look beyond the pleadings to the extrinsic evidence they attached to their motion to dismiss, arguing that such evidence may properly be considered when reviewing "factual challenges to subject matter jurisdiction under Rule 12(b)(1)." The district court, however, dismissed the claims against SF Mutual and SF Fire for failure to state a claim under Rule 12(b)(6), not on jurisdictional grounds. Because we remand the question of subject matter jurisdiction to the district court, we do not consider any facts outside the agreement documents and complaint itself.

first for case precedent from the Florida Supreme Court. Where we find none, we are bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Id.* (quotation omitted).

"We review de novo a district court's dismissal for lack of subject-matter jurisdiction." *Id.* at 1045.

### III.    Discussion

The Pearces appeal several aspects of the district court's decisions below. They argue that (1) they plausibly alleged a claim of apparent agency against SF Mutual; (2) the agreement clearly named SF Fire as a contracting party *or*, at a minimum, was ambiguous as to whether both SF Mutual and SF Fire were contracting parties; (3) they plausibly alleged a claim against SF Mutual for unjust enrichment; and (4) the district court erred when it reassessed CAFA jurisdiction after dismissing their claims against SF Mutual and SF Fire. We address each issue in turn.

### A.    *The Pearces have not plausibly alleged that SF Florida was SF Mutual's apparent agent*

The Pearces argue that SF Florida operated as an apparent agent of SF Mutual, so the contract between the Pearces and SF Florida also binds SF Mutual, making it an appropriate defendant in this case. SF Mutual responds that the allegations in the Pearces'

complaint do not meet the elements of apparent authority under Florida law.[7] We agree with SF Mutual.[8]

"An agency relationship may be express or implied from apparent authority, and the burden of proving the agency belongs to the party asserting it." *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1312 (11th Cir. 2019) (alteration adopted) (quotation omitted).[9] To establish apparent agency, the Pearces must allege

---

[7] SF Mutual also argues that the Pearces waived their apparent agency argument by raising it for the first time on appeal. But the Pearces first articulated their theory of apparent agency in their Response to Defendants' Motion to Dismiss First Amended Class Action Complaint, arguing that "State Farm Mutual is also liable under the theory of apparent agency" and citing *Ilgen v. Henderson Properties, Inc.*, 683 So. 2d 513 (Fla. 2d DCA 1996), the case they also rely upon on appeal.

[8] The district court dispensed with this apparent agency argument and other of the Pearces' arguments (not raised on appeal) without significant discussion or analysis. Nevertheless, "[w]e may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).

[9] In their opposition to the motion to dismiss their FAC, the Pearces defended their breach of contract claim against SF Mutual based on actual agency and on piercing the corporate veil. Both of these theories include an element of actual control of the agent by the principal. *See Marchisio*, 919 F.3d at 1311 (listing "control by the principal over the actions of the agent" as an element of actual agency); *Flooring Depot FTL, Inc. v. Wurtzebach*, 330 So. 3d 47, 49 (Fla. 4th DCA 2021) (listing "dominat[ion] and control[]" of the corporation by the shareholder as a factor required to pierce the corporate veil). The district court rejected these theories, [**Doc. 155 at 4–6**] and the Pearces have not raised them on appeal. Because *actual* control is not an element of apparent agency, the Pearces' allegations that SF Mutual actually controls SF Fire are irrelevant to our analysis.

facts proving three elements: "(a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995). "[T]he existence of an agency relationship" is usually a "question[] to be determined by the jury or by the trier of facts." *Marchisio*, 919 F.3d at 1312 (quotation omitted). But the question of whether the Pearces' allegations, if true, would suffice to create apparent agency is a matter of law which the court can decide, and is thus appropriate for a motion to dismiss. *See Mobil Oil*, 648 So. 2d at 121.

The first factor is the most relevant here. "In cases of alleged apparent agency, something must have happened to communicate to the plaintiff the idea that the [alleged principal] is exercising substantial control." *Id.* The sweep of Florida law demonstrates that the question of when a purported principal has made a sufficient representation is highly fact specific.

At one extreme, the Florida Supreme Court determined that an insurance company was bound by the actions of its agent, despite those actions being outside his authorized authority, when all outward indications signaled that he acted on its behalf. *Fid. & Cas. Co. of N.Y. v. D.N. Morrison Const. Co.*, 156 So. 385, 388 (Fla. 1934). The insurance company had "selected its agent, advertised him to the world, and authorized him to solicit business," given him "blank forms, blank applications, a seal of the corporation, and stationery with the corporate name," "allowed him over a term of

years to execute and deliver bonds and collect the premiums thereon," and "held [him] out as a general agent." *Id.* The court concluded that the purported limitations on his authority as an agent—hidden in a contract between the agent and the principal— were ineffectual when the third party had no knowledge of them. *Id.*

On the other hand, the Florida Supreme Court rejected a claim of apparent agency when a third party had made an oral agreement with an alleged agent who "had none of the indicia of apparent authority" to enter the agreement on behalf of the insurance company: "no application forms, literature, letterheads, calling cards, or anything else." *Centennial Ins. Co. v. Parnell*, 83 So. 2d 688, 690 (Fla. 1955).

The Florida Supreme Court has made clear, however, that use of a parent company's logos and branding is not enough to create apparent agency. *See Mobil Oil*, 648 So. 2d at 120–21. When considering whether a franchisor could be held responsible for the actions of its franchisee, that court noted that the franchisor gas company "owned the property, that [its] products were sold in the [gas] station, [and] that [its] trademarks and logos were used throughout the premises." *Id.* Nevertheless, the court determined that "the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has . . . apparent control over any substantial aspect of the franchisee's business or employment decisions." *Id.* Even the fact that the franchisor "sent

14                    Opinion of the Court                    23-14081

its representatives to the station to provide various routine franchise support services" did not change that result. *Id.* at 120.

Those cases govern our decision here. The Pearces argue that SF Mutual "represented to the public that SF Florida and other subsidiaries in the State Farm Group operated as a single entity" by allowing its branding and logo to be used on the agreement documents SF Florida issued and by "exercis[ing] substantial control over the performance of the contract." But the only *indicia* of control they offer—facts that would be apparent to parties seeking an insurance policy—are the use of the "State Farm" logo and trademark on the PAP booklet and other agreement documents and the copyright notice naming SF Mutual. Such use of an alleged parent company's branding is not enough to establish apparent agency. *Mobil Oil*, 648 So. 2d at 120–21.

The Pearces argue that the caselaw has developed further since *Mobil Oil*: the Florida Supreme Court has more recently stated that an insurer can establish apparent agency by "furnish[ing] an insurance agent or agency with 'any blank forms, applications, stationery, or other supplies to be used in soliciting, negotiating, or effecting contracts of insurance.'" *Almerico v. RLI Ins. Co.*, 716 So. 2d 774, 777 (Fla. 1998) (quoting Fla. Stat. § 626.342(1)). But their reliance on this language, separate from *Almerico*'s full context, is misguided. *Almerico* deals with the narrow question of when an insurance broker, presumed by Florida law to be the agent of the insured, flips the presumption and becomes an agent of the insurance agency instead. *See id.* at 776. The court discussed the

23-14081                Opinion of the Court                15

common law of agency, but it relied primarily on a Florida statutory provision to decide that an insurance broker could sometimes be "acting in the dual roles of [the insurance company's] agent and the [insured's] broker. *Id.* at 782.[10] Nothing in *Almerico* indicates that the court intended to call into question its *Mobil Oil* decision, nor has subsequent Florida caselaw interpreted it as doing so.[11]

---

[10] In fact, the primary language the Pearces rely on from *Almerico* directly quotes the statute, reiterating that *Almerico* is a statutory interpretation case, not one explaining the Florida common law of agency. *See Almerico*, 715 So. 2d at 777.

[11] The Florida Supreme Court has subsequently confirmed that *Almerico*'s language and analysis relate specifically to the insurance broker context. *See Essex Ins. Co. v. Zota*, 985 So. 2d 1036, 1046 (Fla. 2008); *Guarente-Desantolo v. John Alden Life Ins. Co.*, 744 So. 2d 1123, 1125 (1999).

The Pearces cite a more recent decision of this Court that applied *Almerico* outside the insurance broker context. *Marchisio*, 919 F.3d at 1312. In *Marchisio*, we determined that a jury might find an alleged agent acted with apparent authority in a case where the alleged principal allowed the alleged agent company "to issue . . . letters, not just under [the principal's] letterhead, but as signed by [the principal's name]." *Id.* That case does not help the Pearces because they do not assert that the agreement was signed by SF Mutual; in fact, they argue that SF Fire signed the agreement.

The Pearces also point to a Florida District Court of Appeals decision finding that plaintiffs had adequately alleged apparent agency based on language used in the franchisee's contract with the plaintiffs. *Ilgen*, 683 So. 2d at 515 (quoting *Mobil Oil*, 648 So. 2d at 121). But even in that case there were significantly stronger indicia of agency than we have here: the court distinguished the case from *Mobil Oil* by focusing on the fact that the franchisor's name was used "in a key section of the contract." *Id.* at 514. The agreement at issue here, by contrast, names SF Mutual only in a single copyright notice, the equivalent of

16                    Opinion of the Court                    23-14081

The Pearces also failed to adequately plead the other two elements: that they relied on a representation by SF Mutual or that they changed their position based on that reliance. The Pearces alleged that SF Mutual "markets itself in [a] single-entity manner . . . in order to induce Florida residents to enter into PAPs with State Farm," but they nowhere assert that their decision to seek coverage from SF Florida was actually influenced by its relationship with SF Mutual.

Thus, the Pearces failed to allege facts that would support an apparent agency claim.

### B. *The agreement clearly identifies SF Florida as the insurer*

The district court twice determined that the agreement unambiguously identified SF Florida as the contracting insurer. The Pearces argue, first, that the identity of the insurer is ambiguous, and the ambiguity should be construed in their favor as the insured to find that SF Mutual is a party to the agreement. Second, they assert that the agreement's plain language also clearly identifies SF Fire as the relevant signatory and therefore a party to the agreement. Third, and in the alternative, they again argue that

---

simply using SF Mutual's "trademarks and logos." *Id.*; *see Am. Int'l Grp., Inc. v. Cornerstone Bus., Inc.*, 872 So. 2d 333, 336 (Fla. 2d DCA 2004) (determining that the parent company's logo on an alleged agent's agreement form did "nothing more than denote the affiliated relationship of these companies," even when the alleged agent signed the agreement "on behalf of itself and other members of [the parent company]").

the agreement is "ambiguous as to the identity of the contracting parties," so a jury could find that SF Fire was a contracting party. The defendants respond that "there is no ambiguity—the Renewal Certificate clearly identifies State Farm Florida as the Pearces' insurer."

Determining the identity of the insurer requires "construction of an insurance policy which is a question of law subject to de novo review." *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). "[I]n construing insurance policies, courts should read each policy as a whole endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Rather than "focus[ing] solely" on one clause in isolation, "we must read that clause in conjunction with the entire policy." *Id.* "Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." *Ruderman*, 117 So. 3d at 948.

Likewise, we assess whether a contract is ambiguous *de novo*. *See Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008). Contract language is ambiguous if it "is susceptible to more than one reasonable interpretation." *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 570 (Fla. 2011) (quotation omitted). "A provision is not ambiguous, however, simply because it is complex or requires analysis." *Id.* (quotation omitted). "If the interpretation urged by one party is unreasonable in light of the contract's plain

language, the contract is not ambiguous, and the court may not use extrinsic evidence to vary the terms of the contract." *Frulla*, 543 F.3d at 1252 (applying Florida law).

Based on the Pearces' allegations and the documents that the parties agree constitute the operative agreement, it is unambiguous that SF Florida was the lone insurer party to the agreement. The PAP booklet's definitions clearly state that the "Company" providing coverage is the one "shown in the Declarations." And, notwithstanding a belatedly raised demurral,[12] both parties have agreed that the Renewal Certificate constitutes the Declarations. The Renewal Certificate is the only document providing the specific details of the Pearces' policy: the policy number, the insured parties, the insured property, the amount of insurance, the premium, the insurance agent, and the insurer. That document explicitly names the insuring company—SF Florida— and the named insured—the Pearces. None of the other documents included in the agreement specify a particular State Farm entity: aside from a single copyright notice referencing SF Mutual, SF Florida is the only State Farm entity named in any document in the agreement. It is reasonable, then, to understand those documents to incorporate, by definitions, the parties named in the Renewal Certificate—SF Florida and the Pearces. The plain

---

[12] In their briefing before this Court, the Pearces claim that "there is no document labeled 'Declaration' in the record" and that the "Renewal Certificate" does not clearly serve as the Declaration the PAP booklet references. But, as noted above, their SAC describes the agreement as consisting, in part, of "the declarations, titled 'Renewal Certificate.'"

23-14081          Opinion of the Court          19

meaning of the agreement, taken as a whole, is that SF Florida was the insurer, the party bound to provide coverage to the Pearces.[13]

The Pearces argue that the agreement is ambiguous because the PAP booklet does not mention SF Florida and "the only specific company mentioned in the PAP itself is State Farm Mutual" based on a copyright notice that references SF Mutual. No reasonable reader would view a copyright notice as anything other than a legal statement that the form in question is the intellectual property of SF Mutual, especially when viewed in light of "the entire policy." *Anderson*, 756 So. 2d at 34. The Pearces also point out that there are "numerous references to 'State Farm®' and State Farm Mutual throughout the PAP documents." But this argument assumes that every reference to "State Farm" is a reference to SF Mutual rather than an intentionally open-ended designation that allows the forms to be used by any entity associated with State Farm. In fact, the words "State Farm Mutual" appear only once in any of the documents: in the above-discussed copyright of the final endorsement. "State Farm Mutual" does not appear at all in the

---

[13] The Pearces argue that, upon finding that an agreement is ambiguous, Florida law requires a court to interpret it in favor of the insured. Because we conclude that the identity of the contracting insurer is clear from the agreement, we need not invoke presumptions in favor of any party. *See Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979) ("Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is [the presumption in favor of the insured] apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." (citations omitted)).

Renewal Certificate, which includes the details of this particular policy, or in the PAP booklet, which lays out the agreement provisions in detail. The single reference is certainly not enough to give rise to a reasonable inference that SF Mutual was a contracting party.

The Pearces' attempt to link SF Fire to the agreement is even more tenuous. SF Fire is not mentioned in any of the documents forming the agreement. Nevertheless, the Pearces point to a sentence just below the signatures at the end of the PAP booklet, which references "Article VI(c) of this Company's Articles of Incorporation." Based on documents outside the agreement, they argue that "State Farm *Fire* is the only entity" whose "articles of incorporation include an Article VI(c)" (emphasis in original). Thus, they argue that an ordinary person would understand that the "Company" bound by the agreement is not the one listed in the declarations, as the PAP booklet's definitions direct, but is also whichever entity connected to State Farm has an Article VI in its articles of incorporation.

The Pearces cannot create ambiguity by pointing to extrinsic evidence when the contract is clear on its face. "It is axiomatic that the clear and unambiguous words of a contract are the best evidence of the intent of the parties." *Murry v. Zynyx Mktg. Commc'ns, Inc.*, 774 So. 2d 714, 715 (Fla. 3d DCA 2000). For that reason, "extrinsic evidence should not be used to introduce a contractual ambiguity where none exists." *EcoVirux, LLC v. BioPledge, LLC*, 357 So. 3d 182, 187 (Fla. 3d DCA 2022) (alterations

adopted) (quotation omitted).  The Declarations contained in the Renewal Certificate make clear that SF Florida is the "Company" referenced throughout the PAP booklet.  It would be unreasonable to determine that, contrary to an agreement's own definitions and explicit terms, the true contracting party is an unnamed entity. *See Moore v. State Farm Mut. Auto. Ins. Co.*, 916 So. 2d 871, 874 (Fla. 2d DCA 2005) ("[T]he intention of the parties must be determined from an examination of the entire contract and not from separate phrases or paragraphs.").[14]

---

[14] Even when a court determines that a contractual ambiguity makes consideration of extrinsic evidence appropriate, it is "properly admissible, not for the purpose of changing or varying the terms of the written instrument, but to elucidate, explain or clarify *the intention of the parties.*" *Royal Am. Realty, Inc. v. Bank of Palm Beach & Tr. Co.*, 215 So. 2d 336, 338 (Fla. 4th DCA 1968) (emphasis added).  The Pearces have not alleged that the extrinsic evidence they rely on—SF Fire's articles of incorporation—is evidence of their original intention to form a contract with SF Fire.  And in briefing they have argued that they were not aware of this piece of evidence until after litigation was underway.

The Pearces further argue that if the final sentence in the PAP booklet does not point to SF Fire's articles of incorporation and thus make SF Fire a signatory, then that sentence is surplusage and carries no reasonable meaning. But not every contract provision speaks to every conceivable contract interpretation question.  Our conclusion that the insurer's identity is clear and that the final PAP booklet sentence does not make it ambiguous does not render the sentence meaningless, nor does it "strike" the sentence from the agreement. *See People's Tr. Ins. Co. v. Amaro*, 319 So. 3d 747, 753 (Fla. 3d DCA 2021).  True, "no word or part of an agreement is to be treated as a redundancy or surplusage if any meaning, *reasonable and consistent with other parts*, can be given to it." *Royal Am. Realty*, 215 So. 2d at 338 (emphasis added).  We do not determine today that this sentence is surplusage or meaningless.  We simply

22                    Opinion of the Court                    23-14081

Finally, in support of both of their proffered interpretations, the Pearces argue that the PAP booklet is executed by Lynne M. Yowell, Secretary, alleging that Yowell "serves as Secretary of both" SF Mutual and SF Florida.  The Pearces' SAC, though, alleged that corporate filings show Yowell "is Vice President and Secretary for State Farm Mutual, State Farm Florida, *and* State Farm Fire" (emphasis in original).  So her signature alone does nothing to indicate which entity she is representing in this agreement.  Any ambiguity this signature creates, though, is easily resolved by reference to "the entire policy."  *Anderson*, 756 So. 2d at 34; *see also Moore*, 916 So. 2d at 874 (requiring "examination of the entire contract" rather than "separate phrases or paragraphs").[15]

---

conclude that the interpretation the Pearces would give it is not "reasonable." *Id*.

[15] The Pearces point to three cases they offer as "binding Florida precedent construing the identity of the contracting party in accordance with nuances of the signature block."  None track the facts here.  Two cases involved the question of whether signatories obligated themselves as individuals, the companies for which they served as officers, or both.  *See Ross Oil Corp. v. Foshee*, 517 So. 2d 713, 713–14 (Fla. 5th DCA 1987); *Tampa Bay Econ. Dev. Corp. v. Edman*, 598 So. 2d 172, 173–74 (Fla. 2d DCA 1992).  In each case, the court found that the plain language of the signed document clearly obligated the signatory individually, so extrinsic evidence could not be introduced to prove otherwise.  *See Ross Oil*, 517 So. 2d at 714; *Tampa Bay*, 598 So. 2d at 174.  The third case the Pearces cite involved a third-party representative of a senior living home resident who was contractually designated as both the "Resident's Representative" and "the Financially Responsible Party," but signed the contract in question in only one of those capacities.  *See Lepisto v. Senior Lifestyle Newport Ltd.*, 78 So. 3d 89, 91–92 (Fla. 4th DCA 2012).  The court determined

23-14081                    Opinion of the Court                    23

Because the agreement as a whole clearly identifies SF Florida as the contracting insurer, the Pearces' breach of contract claims against SF Mutual and SF Fire fail.

C.    *The Pearces have not plausibly alleged an unjust enrichment claim*

Next, the Pearces argue that the district court erred in dismissing their unjust enrichment claim against State Farm Mutual on the ground that the Pearces "ha[d] not properly alleged that SF Mutual, as a non-party to the contract, ha[d] voluntarily obtained any benefit." The Pearces argue the district court was wrong because Florida law has "long held" that the existence of a valid contract does not preclude an unjust enrichment claim against a nonparty to the contract. SF Mutual responds that because the Pearces are party to a contract dealing with the same subject matter as the unjust enrichment claim, they cannot assert "related unjust enrichment claims against any parties." We need not resolve the precise contours of Florida law on this issue: we conclude that the Pearces' claim fails because they have not sufficiently alleged facts proving each element of unjust enrichment.

---

the contract was "clear" that the representative had signed in only one capacity, so allowing extrinsic evidence to prove otherwise would be inappropriate. *Id.* at 93. None of these cases support the idea that extrinsic evidence and obscure language accompanying a signature can alter the capacity in which an individual signs a contract when the contract is otherwise clear.

Unjust enrichment is an equitable cause of action sometimes referred to as "contract implied in law" or "quasi contract." *Glob. Network Mgmt., LTD v. Centurylink Latin Am. Sols., LLC*, 67 F.4th 1312, 1316 (11th Cir. 2023). "The law will create" an implied contract "where it is deemed unjust for one party to have received a benefit without having to pay compensation for it." *Id.* (quotations omitted).

Florida courts are clear that an unjust enrichment claim fails when there is "an express contract between the parties concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (per curiam); *see also Agritrade, LP v. Quercia*, 253 So. 3d 28, 34 (Fla. 3d DCA (2017). It is less clear whether a separate unjust enrichment claim can survive when "the parties to the contract which 'concerns the same subject matter' are not the parties between whom the claim for unjust enrichment lies." *Agritrade*, 253 So. 3d at 34. While some decisions have suggested that the existence of a contract forecloses equitable claims against even nonparties, *see, e.g.*, *Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 430 (Fla. 3d DCA 2022), other decisions have explicitly allowed unjust enrichment claims against nonparties to stand alongside breach of contract claims against parties to the conract, *see, e.g.*, *Variety Child.'s Hosp., Inc. v. Vigliotti*, 385 So. 2d 1052 (Fla. 3d DCA 1980) (holding that an express contract between a father and a hospital for the care of a child did not prevent the hospital from bringing an unjust enrichment claim against the mother for the same care).

Assuming without deciding that the Pearces could bring an unjust enrichment claim against SF Mutual as a nonparty to the agreement, their claim fails for another reason: they have not plausibly alleged facts that would prove the necessary elements of unjust enrichment. The elements of a cause of action for unjust enrichment are as follows: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Pincus v. Am. Traffic Sols.*, 333 So. 3d 1095, 1097 (Fla. 2022) (quotation omitted).

The Pearces' FAC alleged that SF Mutual "retained unearned premiums to which [it was] not entitled" and that "[i]n equity and good conscience, [it] should not be permitted to retain the unearned premiums paid by Plaintiffs and members of the Class." We have no need to assess the plausibility of their allegations as to the first two elements, because they fail at the third element. The Pearces' FAC alleged that "the uniform terms of Defendants' PAPs require them to refund the excess, unearned premium they collected over the life of the policy based on the inflated amount insured," but that they have not done so. In other words, it is unjust for SF Mutual to retain the alleged benefit *only if* the agreement requires a refund, a question requiring contract interpretation. The alleged inequity of SF Mutual's actions is inextricably bound up with the agreement (the very reason courts have been loath to allow unjust enrichment claims when a contract covers the same

subject matter).  Absent any reason independent of the contract that it would be inequitable for SF Mutual to retain the premiums, the Pearces fail to plead a plausible unjust enrichment claim under Florida law.

> D.     *The district court erred in dismissing the complaint for lack of jurisdiction without analyzing whether the claims against SF Mutual and SF Fire were frivolous*

After dismissing all claims against SF Mutual and SF Fire, the district court dismissed the Pearces' remaining claims against SF Florida for lack of subject matter jurisdiction, because the only remaining named plaintiffs and defendant were all from Florida. The Pearces argue that the district court erred because CAFA jurisdiction is assessed at the time of filing, and post-filing changes cannot destroy jurisdiction.

CAFA provides original federal jurisdiction over civil class actions in which "(1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the putative class includes at least 100 members; and (3) any member of the putative class of plaintiffs is a citizen of a state different from any defendant." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1263 n.3 (11th Cir. 2009) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).

We have previously determined that a court should assess CAFA jurisdiction based on the time the operative pleading was filed.  *See Wright Transp., Inc. v. Pilot Corp.*, 841 F.3d 1266, 1271–72 (11th Cir. 2016).  Post-filing events, including those that "d[o] away

with the class claims," do not destroy the court's jurisdiction over a case under CAFA. *Id.* at 1272.

In *Wright*, the district court dismissed the plaintiff's class claims after those claims were settled in a parallel class action. *Id.* at 1269. The court then dismissed the remaining individual state law claims to allow the plaintiff to refile in state court. *Id.* at 1269–70. On appeal, we explained that "CAFA jurisdiction is not easily defeated," and because the plaintiff had established jurisdiction at the time of filing, "CAFA jurisdiction continue[d] to confer original federal jurisdiction over the remaining state-law claims in this suit." *Id.* at 1272. Other circuits have adopted this same understanding of jurisdiction under CAFA. *See, e.g.*, *Metz v. Unizan Bank*, 649 F.3d 492, 500 (6th Cir. 2011) ("The "filed under" language [in 28 U.S.C. § 1332(d)(1)(B)] shows that it is the time of filing that matters for determining jurisdiction under CAFA."); *cf. Louisiana v. Am. Nat'l Prop. Cas. Co.*, 746 F.3d 633, 639–40 (5th Cir. 2014) (collecting cases).

There is, however, one generally recognized exception to this rule: "Class-action claims filed in or removed to federal court under CAFA can be dismissed for lack of jurisdiction if those claims contain frivolous attempts to invoke CAFA jurisdiction or lack the expectation that a class may be eventually certified." *Wright*, 841 F.3d at 1271. In such cases, a court may conclude that jurisdiction never existed "in the first place." *Id.*

The district court based its lack of diversity conclusion on the allegations and claims remaining *after* it had dismissed all the claims against SF Mutual and SF Fire, so it did not analyze

jurisdiction as of the complaints' filing.  For the same reason, the court did not assess whether the Pearces' claims against SF Mutual or SF Fire were frivolous.  Because these questions are highly fact intensive, we will not reach them here in the first instance.  We instead remand to the district court to determine whether the Pearces' complaints alleged facts supporting CAFA jurisdiction at the time of filing and whether the Pearces' claims against SF Mutual and SF Fire were "frivolous or deficient under CAFA *at the time [they were] filed.*"  *Id.* at 1272 (emphasis in original).[16]

## IV.    Conclusion

For these reasons, we affirm the district court's dismissal of claims against SF Mutual and SF Fire, vacate the dismissal of the breach of contract claims against SF Florida, and remand for a new jurisdictional analysis under CAFA.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[16] Because both the FAC and the SAC invoke CAFA jurisdiction and are on appeal here, the district court's analysis on remand should address the claims in both complaints.